## WARK v. NEW ORLEANS PUBLIC SERVICE, Inc.

### No. 16225.

Court of Appeal of Louisiana. Orleans.

June 22, 1936.

Ivy G. Kittredge, of New Orleans, for appellant.

Carroll, McCall, Plough & Carroll, of New Orleans, for appellee.

JANVIER, Judge.

As Mrs. Daisy Dickermann Wark, plaintiff, was attempting to alight from a street car in which she had been a passenger, she sustained injuries which, she alleges, were caused by a premature starting of the car. Charging that the conductor, an employee of defendant company, had given a signal to start while she was still in the act of alighting and that he had then suddenly given another signal to the motorman to stop, and that these acts constituted negligence on the part of the conductor, she seeks monetary redress for her injuries and for her suffering and for the financial losses which she alleges she has sustained as a result:

Defendant company denies that there was a premature starting of the car, or that its employees were in any way negligent, declaring that, after the car had been brought to a stop in order that plaintiff might alight, it was not again started, or in any way moved, and that Mrs. Wark's fall resulted solely from carelessness on her own part in placing her foot too near the edge of the step and in catching the heel of her shoe, which, it is alleged, was unusually and dangerously high, upon that edge of the step, with the result that she fell forward, twisted her leg, and sustained the injuries complained of.

The judge a quo accepted plaintiff's version of the accident and rendered judgment in her favor for $1,250, and from this judgment defendant corporation has appealed.

The sole question presented is one of fact, and we approach it with a full realization of the strong presumption of correctness which attaches to the finding of a trial court on such a question. But we find the testimony of Mrs. Wark most unconvincing. In the first place, she states that the conductor of the street car was not only rude and impudent to her before she alighted, but that, after she had fallen, he failed and refused to come to her assistance until he was ordered to do so by a gentleman who came to help her from another car which had stopped behind the one from which she was alighting. Such conduct would certainly be most unusual and reprehensible. We realize, of course, that employees of corporations, like other persons, are sometimes rude, impolite, and impudent, but it is most difficult to believe that an employee would have gone to the extremes concerning which Mrs. Wark testifies not only prior to the accident, but after she had fallen and had sustained, obviously, painful injuries. Nevertheless, were there no testimony to the contrary, we would not find it possible to do otherwise than accept her version of the affair, but there are other facts and circumstances which confirm us in the belief that she is, to say the least, mistaken in her statements.

She says that the reason for the impudent conduct on the part of the conductor was his desire to make her hurry because the car was already behind its schedule. It is shown without even any attempt at contradiction that the car was not behind schedule and that there was no reason at all for the conductor to attempt to force her to accelerate her movements.

We agree with counsel for defendant in his statement that it would indeed require the instincts of a beast for the conductor, after causing the false start which threw her down, tore off her shoe, and severely injured her, to calmly remain on the platform and insultingly tell her that he had no time to lose with her and that she was not injured, but only dusty.

The only evidence as to a premature start of the car was given by plaintiff herself, and there is no word or fact shown in the entire record which can be pointed to as corroborative of her statement in this regard. In fact, she herself does not say that the car started, but merely states that it made a movement as though it would start and then suddenly stopped. Her testimony as to what this movement consisted of is very vague and is most difficult to understand. We quote from it:

"A. * * * The car didn't have a chance to go.

"Q. It did not move? A. No.

"Q. It jerked? A. Yes, sir.

"Q. Whether it actually moved or not, I understand you don't know? A. Well, I think I do know.

"Q. Well, do you know? A. I don't believe that it did move. Just simply jolted, as I say."

We also note that, had the car made a sudden and unexpected lurch forward, she would thereby have been thrown, not forward, as she says she was, but backwards, towards the rear of the car. She was alighting from the rear end of the car, fac-

ing towards the street and with her back towards the car. Her left hand was grasping the handrail and her left foot, she says, was on the step. She states that just as her right foot was about to touch the ground the car lurched and she was thrown down. It is obvious that such a lurch would have thrown her towards the rear end of the car and not towards the forward portion. Yet she claims to have been thrown against the side of the car, and that her left side and back were bruised and injured by coming into contact with that portion of the car which was nearer the front than the step from which she was alighting.

We also note that it was her right foot which was hurt and that from the right foot her shoe in some manner was pulled as she fell. We realize that accidents sometimes produce strange and unexpected results. Yet it is difficult to understand how the right foot could have been hurt had the accident occurred as plaintiff testifies it did. Her right foot was in the air near the ground. She was thrown forward, so that her left side and back struck the car. Why should her right foot have been injured at all? Why should the shoe have been pulled from that foot, as, undoubtedly, it was? On the other hand, if it was the right foot which, by the heel of the shoe, was caught on the edge of the step, then she would have pitched forward with the shoe so caught, and the natural result would have been the turning of the foot and possibly the forcible removal of the shoe, and the twisting of the foot and possible fracture of some portion thereof.

That she is mistaken about the injuries to her left side and back is evidenced by the testimony of her physician, who does not make the slightest reference to any such injuries.

We find, then, that the testimony of plaintiff, even if it stood alone, contains discrepancies and inaccuracies which are difficult to understand, and that when it is viewed in connection with the contradictory evidence submitted by defendant, it becomes impossible of acceptance. The conductor, the motorman, and four passengers, who were on the car, state that there was no premature start, and the conductor, who was the only one who actually saw plaintiff fall, says that "her heel caught on the step." The passengers were all shown to have been without any interest whatever and all agree that the car did not start prematurely and that, in fact, it did not make any movement of any kind.

The district judge held that none of these passengers could be relied upon concerning any of the facts which occurred prior to their discovery that plaintiff had been hurt, because he felt that there had been no occurrence which would have fixed in their minds the fact that anything unusual had happened. In this we feel that he was in error. Had the conductor given a starting signal of two bells, as Mrs. Wark says he did, and had he then given immediately a stop signal of one bell, as she claims, and had she then immediately been hurt, those circumstances in themselves would have been so unusual as to have definitely and positively fixed in the recollections of the witnesses the happenings immediately following and immediately preceding their occurrence. The fact, then, that the witnesses recollected no such occurrences is strong proof of the fact that no such false start and stop were made.

Viewed as a whole, the record convinces us that the car did not make a sudden lurch or jerk, and our conviction on this point is so strong that we cannot avoid the conclusion that the finding below was manifestly erroneous.

The accident may not have occurred exactly as the conductor testifies that it did, but the record shows that there was no negligence on the part of the employees of the company, and that is all that the defendant is required to show. To exculpate itself it need not prove exactly how the accident occurred, after it has conclusively shown that there was no negligence on the part of any of its employees and no defect in its equipment. Cusimano v. N. O. Public Service, Inc., 170 La. 95, 127 So. 376.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that there now be judgment in favor of defendant dismissing plaintiff's suit at her cost.

Reversed.