Katie Mahne, on January 15, 1946, at about 4:30 o'clock in the afternoon, was struck by an automobile owned and operated by William J. Steele, of Lacombe, Louisiana, at the corner of Camp and St. Joseph Streets, in the City of New Orleans, and was severely injured.
She brings suit against Steele claiming damages for her physical and mental pain and suffering, loss of earnings, hospital and physician bills, and for the costs of mechanical appliances. She alleges that she had been walking along the sidewalk on the *Page 762 
river side of Camp Street in an uptown direction, and that when she reached the intersection of St. Joseph Street the semaphore traffic signal light showed green; that she stepped from the curb on the downtown side of St. Joseph Street to cross the street, and that she had nearly completed the crossing when she was run into by defendant's automobile, which had been traveling in the direction of downtown on Camp Street and made a right hand turn into St. Joseph Street. She charges that defendant was negligent and that the accident was caused by his failure to maintain a proper lookout, in failing to respect her right of way, in operating his machine with disregard for the rights of pedestrians, in failing to have his vehicle under proper control, and in having failed to see her.
The defendant answered denying negligence, and alleged that the accident was caused through the fault and carelessness of plaintiff. It is alleged in the answer that plaintiff was not walking in an uptown direction, but was walking in the opposite direction, or toward downtown, and that just as Steele had completed the turn from Camp Street plaintiff negligently stepped from the curb on the uptown side of St. Joseph Street directly into the front right fender of the automobile. In the alternative, defendant pleads that plaintiff was guilty of contributory negligence such as to bar a recovery.
The Board of Administrators of the Charity Hospital of Louisiana in New Orleans intervened under the provision of Act No. 289 of 1938, § 4, alleging that Katie Mahne had been furnished with hospitalization, medicines, x-rays, etc., in the treatment of her injuries, and that there is due intervenor the sum of $436.50 for said services. Intervenor's prayer was for judgment in its favor and against both plaintiff and defendant, in solido, for the amount of its claim.
The matter was tried on its merits in the district court and there was judgment in favor of plaintiff and against defendant for the sum of $1,783.50, and judgment in favor of the Board of Administrators of the hospital, and against plaintiff, for the sum of $436.50, together with ten per cent attorney's fees. Defendant has appealed.
Besides the testimony of plaintiff and defendant, the only other witness who testified respecting the accident was Frank Osborne. The testimony of plaintiff and defendant is irreconcilable. Plaintiff testified that she had almost completed her crossing from the downtown side to the upper side of St. Joseph Street, and that she was just a short distance (which she estimated at about three feet) from the uptown curb when defendant's automobile made the right hand turn into St. Joseph Street, its front bumper striking her and knocking her to the ground. She testified that she did not see the automobile and that she had no warning or knowledge of its approach. On the other hand, defendant testified that he had been driving his automobile down Camp Street in the direction of Canal Street (Camp Street being a one-way street for vehicular traffic moving in that direction), and that he intended to turn right into St. Joseph Street in order to proceed in the direction of the Mississippi River; that when he reached the intersection the traffic semaphore light showed red for traffic travelling on Camp Street, and that he stopped behind another car which was immediately in front of him, in order to await the favorable green light which would permit his making the right hand turn; that after a few seconds, the light changed from red to green and the car in front of him started off; that he thereupon turned into St. Joseph Street, and just as he had about negotiated the turn Katie Mahne stepped from the uptown curb of St. Joseph Street and walked into the right front fender of his automobile. He further stated that the accident occurred during a heavy down-pour of rain and that plaintiff was carrying an open umbrella, that he had no notice or knowledge of her presence until "the umbrella went up in the air" as a result of her contact with the automobile. The evidence shows that defendant stopped almost immediately, and with the assistance of another person placed plaintiff into his automobile and took her to the Charity Hospital. He then called at one of the police stations and made a report of the accident. He emphatically denies that plaintiff was crossing the street as she testified, and insists that he did not see her in the intersection. *Page 763 
Frank Osborne, who appeared for plaintiff, testified that he had been driving his truck on St. Joseph Street in the direction of the lake, and that when he reached Camp Street the signal light showed red for traffic travelling on St. Joseph Street; that he stopped his truck to await the change of the light, that there were two or three cars directly in front of him which were also waiting for the light signal to change. He stated that he was looking at the light; that defendant's automobile turned the corner and he saw "an umbrella jump in the air," and defendant stopped almost immediately. Osborne stated that he did not see any pedestrian cross St. Joseph Street from the downtown side to the upper side.
If the accident occurred in the manner described by plaintiff, the defendant must have been guilty of negligence; if it happened according to defendant's version, plaintiff should recover nothing.
The facts show that Katie Mahne is employed as a cigar maker at an establishment on Girod and So. Peters Streets, and that she works until 0 o'clock, p.m., each day. She testified that she resides at 1404 Clio Street, and that after leaving her place of employment it is her custom to walk back Girod Street to Camp Street, and then to proceed on the river side of Camp Street to Clio Street, and that during this journey it is necessary to make a crossing from the downtown side to the upper side of St. Joseph Street. She further testified that on the day of the accident she pursued this route, as she had done for the past eleven years.
[1] A careful study of the evidence as a whole leads us to the conclusion that plaintiff's testimony should prevail. To reach 1404 Clio Street from her place of employment plaintiff, if she had taken her usual route, would of necessity have required the crossing from the downtown side to the uptown side of St. Joseph Street, and there is no reason shown why, especially in the heavy rain which was falling at the time, she would have crossed in the opposite direction.
The testimony of Frank Osborne is not very helpful. This witness was sitting in the cab of his truck, parked behind two or three other vehicles, awaiting the change of the signal light. 'He testified' that he kept his eyes focused on the light. While it is true he states that he saw no pedestrian cross St. Joseph Street, we believe this Witness paid more attention to watching the light than to looking for pedestrians. Furthermore, it would seem that he was not located at a particularly good point of vantage.
Both plaintiff and Osborne testified that there were several automobiles parked on the uptown side of St. Joseph Street, and a line of cars on the opposite side waiting for a favorable light signal, and that these two lines of vehicles formed a narrow lane through which defendant would be required to travel after making the turn. It is not unreasonable to suppose that Steele, in turning into this narrow lane, had his attention affixed to it, and that he did not see plaintiff in the street.
Defendant's counsel insists that if plaintiff had been walking in an uptown direction her right leg would have received the blow from the automobile. He strenuously argues that all of the injuries suffered by her were to the left leg, and that this circumstance would bear out the defendant's version that she was not walking as she stated, in an uptown direction, but rather as defendant testified, in the opposite direction.
The fact that the injuries were sustained to plaintiff's left leg is not sufficient to warrant a conclusion that she was moving in a downtown direction. After contact with the automobile, she fell to the pavement, and it is most likely that the injuries occurred from the impact with the ground. Defendant testified that his car was "just creeping along," and that when he saw the umbrella go into the air he immediately stopped. If this be so, the blow from the automobile would seem not to have been sufficient to cause the serious injuries which plaintiff sustained, and we think, under the circumstances, that her injuries were caused from her fall rather than from the force of the blow by the automobile.
[2] With the sharp conflict existing in the testimony of the parties, great weight must be given to the appraisal placed upon it by the trial court. He had the opportunity of observing the demeanor of the witnesses *Page 764 
and hearing them testify, and was in a better position than we are to resolve the question of veracity. Under the familiar rule of law the findings of the lower court as to facts should not be disturbed, unless there appears manifest error, and we fail to notice any.
[3-5] The driver of an automobile, upon approaching an intersecting street with the intention of turning into it, should yield the right of way to a pedestrian who is crossing the intersection and is in the line of travel which the driver intends to follow, or is in such proximity thereto that if he continues he will reach the same in advance of the automobile. We conceive it to be the duty of an automobile driver, before turning into an intersecting street, to keep a sharp lookout for pedestrians and other traffic, so as to avoid striking them. Defendant was imprudent and guilty of negligence in having failed to see plaintiff and in not taking precaution to avoid injuring her. Plaintiff having been in the street had the right to continue across the road-way, and the automobile should have yielded to the rights of the pedestrian. Ordinance No. 13,702, Commission Council Series, of the City of New Orleans, Art. 4, Sec. 3(c), provides:
"When both a pedestrian and a vehicle face a 'GO' signal and the pedestrian starts across the roadway in the direction permitted, and the vehicle proceeds to turn to either the right or left, overtaking such pedestrian, the vehicle shall yield to the pedestrian."
[6] The Supreme Court, in the case of Jackson v. Cook,189 La. 860, 181 So. 195, 197, said that the well recognized and settled rule is:
" * * * that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."
The Court also said, in Rottman v. Beverly, 183 La. 947,165 So. 153, 156:
" * * * The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. * * * "
And we said, in Jones v. American Mut. Liability Ins. Co., La. App., 189 So. 169, 172:
"We readily recognize that it is the duty of a motorist to be constantly vigilant and observe the presence of anything which is at or near the path of his travel."
There is no dispute regarding the claim of the Charity Hospital, as counsel for both plaintiff and defendant stipulated that its bill is correct.
Plaintiff offered in evidence a certified copy of the record of Charity Hospital, and under the provisions of Act No. 90 of 1938, § 1, such record makes prima facie proof of its contents. It shows that plaintiff was admitted on the day of the accident, and that her injuries were diagnosed as a plateau fracture of the left tibia, a fracture of the medial malleolus of the left ankle, and a scalp laceration, which plaintiff testified required six sutures. She remained in the hospital for three weeks, then went to the Convalescent Home until April 12, 1946. A cast extending to the thigh was placed on her left leg and was not removed until the above date. After being relieved of the cast, she was supplied with a metal brace, which she wore for nearly six months. From time to time she made visits to the out-clinic, and was not discharged until November 14, 1946. Plaintiff testified that she could not return to her employment until November 18, 1946.
[7] The judgment appealed from awarded plaintiff the sum of $1,783.50. The uncontradicted evidence is that she expended $33.50 for the brace, and lost nearly ten months salary at the rate of $25 per week. However, she claimed only $500 for loss of earnings, and it is evident that the lower court, in addition to allowing the expenditure for the brace and the loss of wages, allowed $1,250 for her physical injuries. Defendant contends that the amount allowed her is excessive, but we do not think so. Plaintiff's injuries were serious, and the allowance of $1,250 can not be considered excessive.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.