JANVIER, Judge.
Shortly after two o’clock on the afternoon of December 5th, 1949, Mrs. Teur-lings J. Roy, while a passenger in an electric streetcar of defendant, New Orleans Public Service, Inc., fell to the floor and sustained physical injuries. Alleging that the fall was caused by negligent operation of the car by employees of the defendant, Mrs. Roy and her husband brought this suit for damages against the said corporation. Mrs. Roy, to compensate her for her pain and suffering, mental anguish, disability and “loss of consortium”, prayed for judgment for $40,000 and Mr. Roy, as reimbursement for medical bills and other expenses and losses already incurred and to be incurred in the future, prayed for judgment for $21,632.00.
Plaintiffs alleged that just after Mrs. Roy had boarded the streetcar and was “completing her entry into the car”, it “was negligently subjected to a sudden unusually violent and extraordinary jerking or stopping, which caused her to lose her balance and violently precipitated her to the floor of the car, severely injuring her * *
Defendant corporation, while admitting that Mrs. Roy was a passenger in the car at the time alleged, denied that the car was subjected to any sudden jerk, or jolt, or stop and averred that Mrs. Roy “in some manner unknown to your respondent, and without properly balancing herself or holding on to the stanchions and protections provided on said streetcar, in some manner slipped, tripped and lightly fell to the floor of the respondent’s streetcar.” In the alternative, defendant alleged that Mrs. Roy was guilty of contributory negligence in failing to exercise necessary care and caution.
In the Civil District Court for the Parish of Orleans there was judgment dismissing the suit of plaintiffs, and they have appealed.
It is conceded that if the fault of Mrs. Roy was caused by the sudden and extraordinary jolting or jerking or stopping of the car, the burden was placed upon defendant corporation to show that the jolt or the jerk or the sudden stop was not caused by negligence of its employees or by defects in its equipment.
Since the decision of our Supreme Court in Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376, 378, it has been held in this State that “the burden of proof is on the carrier to show that it was free from any negligence which *427 might have caused the accident,” but that in showing this it is not necessary that the carrier show the actual cause, provided that “it does show that the injury occurred through no negligence of its own.”
In a somewhat later decision, Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378, 380, the Supreme Court quoted with approval the following language which appeared in a decision of this Court in Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420:
“ ‘It is also well established in our jurisprudence that, where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault, but it is not required to show how and why the passenger was injured in order to bar recovery. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376; Dillon v. New Orleans Public Service, Inc., La.App., 170 So. 406. To the same effect see Bynum v. City of Monroe, La.App., 171 So. 116; Wark v. New Orleans Public Service, Inc., La.App., 168 So. 797; Hughes v. Baton Rouge Electric Company, La.App., 188 So. 4737 ”
It is often argued that, as a result of this well established jurisprudence, the burden of proving itself free from negligence is placed upon the carrier in all cases in' which a passenger sustains injury and that this is true regardless of how or where the extraordinary occurrence takes place. It is often contended, for instance, that if a passenger is injured from a cause originating within the vehicle in which the passenger is riding and from a cause of which the passenger should have complete knowledge whereas the employees could not possibly have any knowledge at all, nevertheless the burden is on the carrier to show itself free from negligence. We cannot agree that in every such case the carrier must bear any such burden.
Where a passenger falls while walking or standing inside the conveyance it must be first shown by the passenger that there was some unusual occurrence, such as a jerk or a jar or a sudden stop. When this is shown, and not until this is shown, is there placed upon the carrier the burden of showing that the jolt or the jerk or the stop did not result from negligence on the part of its employees, or from defective equipment, or from other fault for which it would be responsible.
We discussed such a situation in. Ensminger v. New Orleans Public Service, Inc., La.App., 65 So.2d 402, 405, in which writs were refused by the Supreme Court, and, in referring to the doctrine announced by the Supreme Court in the Cusimano case, we said:
“ * * * we see no reason for the application of that doctrine in a case in which the passenger is fully aware of what has caused the accident and is able to base his claim for damages on allegations setting forth the exact cause thereof. As we said in that case, we can well understand that, where a train is derailed or there occurs an accident concerning the cause of which the passenger cannot possibly have knowledge, it is, of course, proper to say that the carrier must show that it was guilty of no negligence which caused the accident. But where the passenger had full knowledge of the cause, why should not the burden be on the passenger just as it is on the plaintiff in all other cases ? * * * ”
When the Cusimano case was before this Court the author of this opinion dissented, and since the Supreme Court granted a writ of certiorari in that case and then reversed the decision of this Court, 12 La.App. 586, 122 So. 903, 906, we think it not improper to quote from the dissenting opinion in that case the following:
“I can well understand that, where a passenger is injured under mysterious or unusual circumstances, the burden is on the carrier to explain just what happened; but I do not believe that the proper interpretation of the decision in the Hopkins Case requires *428 us to hold that no matter what the circumstances, no matter how open and apparent the happening may be, and no matter how free from negligence the carrier may prove itself to be, the burden is on it to establish every detail with reference to what caused the injury.
“I concede that it is logical to hold that, if a train is derailed and a passenger is injured, or if there is a collision and the passenger is injured, it is the duty of the carrier to explain away its own negligence and to show the true cause, because derailments and collisions are caused by circumstances over which the passenger has no control and of which he has no knowledge; but here we have an affirmative allegation that the cause of the accident was the sudden starting of the car and we have the finding of the trial court, in which I thoroughly concur, that the car did hot start. Must the carrier go further and show that the plaintiff was injured because of a bilious attack or because one of her ankles was weak; if so, then there is a burden placed on the carrier which, in my judgment, is most unreasonable, and which in the majority of instances it cannot possibly sustain.”
In Schmitt v. Algiers Public Service Co., La.App., 69 So.2d 754, 757, in which writs were refused by the Supreme Court, we referred to the rule announced in the Cusimano case and said:
“ * * * But that rule is applicable only where under the facts, it is obvious that the passenger himself did not have, and could not have had, better information than the employees of the carrier as to the cause of the accident. When a passenger is in the conveyance and there occurs therein something of which the passenger has full knowledge but of which the employees of the carrier obviously have no knowledge, surely the rule has no application. * * *”
Accordingly, in a case such as this there is first a duty on the passenger who would recover for injuries to prove not only that the injuries were sustained but also that the fall which caused the injuries resulted from a jolt, or a jar, or some such unusual occurrence, of course the passenger need not go further and prove the cause of the unusual occurrence, because, under the well established doctrine to which we .have referred, the burden would then be placed upon the carrier to show that that unusual occurrence did not result from negligence. Thus, in the case at bar, the burden of proving not only that Mrs. Roy fell but also that the fall was caused by a jolt, or a jar, or some such unusual occurrence was placed upon the plaintiffs, and they have definitely not borne the burden of proving that there was any such occurrence. It is very clear that the District Judge "felt that no such unusual occurrence was shown by the evidence.
However, even if the doctrine to which we have referred could be so broadened as to require that the carrier must show itself free from negligence, even where the passenger only shows the injury and fails to show any unusual occurrence, still we think that the record here clearly establishes that there was no negligence on the part of the carrier.
Again we agree with the District Judge who said:
“The Court is of the opinion that there was no negligence on the part of 'defendant * *
It is argued on behalf of plaintiffs that we should not apply the well established rule to the effect that the conclusions of the District Judge on a question of fact should not be reversed unless manifestly erroneous. This argument is based on the statement that here, although the judgment was rendered on July 8, 1952, the reasons for judgment were not handed down until January 16, 1953, which was more than six months after the judgment had been rendered and that consequently the District *429 Judge, in that interim, had forgotten substantial portions of the evidence and that we, with the written record before us, are in a better position to pass upon the facts than was the District Judge when he rendered his reasons. We find, however, that in those reasons the District Judge said:
“The Court has examined very carefully the entire transcript of the testimony and its reading thereof only confirms its original opinion, which was conveyed to the counsel orally when the judgment was rendered, that the defendant, New Orleans Public Service, Inc., should be absolved from responsibility herein. * * * ”
When we ourselves review the record we find that there is no corroboration of Mrs. Roy’s statement that there was a sudden jerk, or jolt, or stopping of the car except that which comes from Mr. W. L. McAlli-ster, who says that he was a passenger and was on the rear end of the streetcar and witnessed the entire occurrence. As to this witness all that we find it necessary to say is that we agree with the District Judge that Mr. McAllister was not present, or at least, that, he knew nothing whatever about the occurrence.
As against the testimony of Mrs. Roy, and Mr. McAllister, there is the testimony of Frank St. Angelo, the conductor of the car, of Albert A. Saul, the motorman, and of Theodore Melder, a disinterested witness who was a passenger and was seated on what it known as a “beauty seat” which runs lengthwise of the car. This witness says that he was facing Mrs. Roy and the conductor when Mrs. Roy fell, and he says that there was no unusual occurrence and that the “lady mis-controlled herself.”
The fall occurred just after Mrs. Roy had boarded the car, and the motorman Saul knew nothing about it until a short time afterwards when the conductor reported to him that Mrs. Roy had taken her seat and had then walked back to tell him that she had been injured in the fall. It is argued from this that the motorman could not have remembered whether there had been a jolt, jerk or sudden stopping of the car a short time earlier which might have caused the accident. If there had been such an occurrence and the motorman was told only a few moments later about it, surely there would have been nothing unusual or extraordinary about his recollecting that there had been no jolt, jerk or sudden stopping only a few minutes earlier. It is shown that the car had gone only a few city blocks after the occurrence before the conductor reported the matter to the motorman.
The testimony of Melder, the other passenger and of St. Angelo, the conductor, is attacked because, according to counsel for plaintiffs, they contradict each other as to just how Mrs. Roy fell, as to how she was helped up, and in other minor details. They are both certain that there was no unusual jolt; that Mrs. Roy fell without any apparent cause, and that they both assisted her in arising after the fall. The minor differences in the details of the testimony of these two witnesses are only such as always occur when witnesses who have seen an accident attempt to describe it just as they saw it. These differences only prove that each of the witnesses was attempting to describe the accident as he remembered it.
A more detailed discussion of the evidence would serve no useful purpose. The record leaves in our minds no doubt at all that there was no negligence at all on the part of the operators of the streetcar and that Mrs. Roy’s fall was caused by her own inability to properly balance herself apparently as she was stepping from the rear platform to the floor of the car.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed-