100 So.2d 557 (1958)
Melvin L. JOFFRE, Individually, and For The Use And Benefit of His Minor Sons, Melvin Joffre and Ronald Joffre,
v.
IKE HAGGERT MACHINE WORKS, Inc., James K. Bauman and The Travelers Insurance Company.
No. 20942.
Court of Appeal of Louisiana, Orleans.
February 3, 1958.
Rehearing Denied March 3, 1958.
Writ of Certiorari Granted April 21, 1958.
*559 Dufour, St. Paul, Levy & Marx, and William M. Lucas, Jr., New Orleans, for plaintiff and appellee.
May & Carrere, New Orleans, for defendants and appellants.
McBRIDE, Judge.
This appeal involves a suit for damages arising out of a head-on collision between an AJF motorcycle and a one-half ton pick-up truck a few minutes before 9 o'clock in the morning on September 26, 1955, on Fourth Street at or near the intersection of Brown Street in Harvey, Louisiana. Fourth Street, which is paved, has two traffic lanes and accommodates two-way vehicular movement. Shortly before the accident, Melvin Joffre, aged 19, had been driving his motorcycle on Fourth Street in an easterly direction, or toward Gretna, and his younger brother, Ronald, aged 17, was riding as a passenger on the "Buddy" seat, i.e., a seat behind the driver of the motorcycle. The boys were on their way to school, which is located several blocks beyond the site of the accident. Upon reaching the Harvey Canal, they observed that the bridge spanning the canal had been raised to permit navigation along the canal at this point. Thus, they found themselves at the foot of the bridge and at the head of a line of vehicles which had been proceeding toward Gretna but which were compelled to stop because no crossing of the canal could be made due to the open bridge. Upon the bridge being lowered, the boys proceeded forward and traveled along Fourth Street in the proper lane at between 20 to 25 miles per hour until the accident occurred at about Brown Street, which is some four blocks distant from the canal.
The truck with which the motorcycle collided was owned by the defendant firstly named and was being operated by its servant, Baumann, during the scope and course of his occupational duties. Baumann was driving in the opposite direction. The facts are that he had been in the long line of traffic moving westwardly, or away from Gretna, which had also been compelled to come to a standstill because of the raised canal bridge. Baumann was on his way to his employer's place of business on Peters Road, which parallels the Harvey Canal on the Gretna side thereof. In other words, it was not necessary that Baumann travel as far as the canal, and his intention was to execute a left turn into Peters Road and proceed to his destination. While his, the westbound, lane of traffic was stopped, Baumann's position in the line was about nine blocks distant from the canal. Baumann, not wishing to await the lowering of the bridge and for the vehicles ahead of him to move so that he could proceed onward, drove his truck from the line of stationary vehicles into the lane reserved for traffic traveling toward Gretna. While Baumann was proceeding in the wrong lane of traffic at about 15 miles per hour, the accident with the motorcycle took place.
Melvin L. Joffre, father of the boys, individually, and also for the use and benefit of Melvin Joffre and Ronald Joffre, his two minor sons to whom he is natural tutor, brings this suit against the owner of the truck, its driver, Baumann, and also the liability insurer of the truck, claiming from them, in solido, certain enumerated damages allegedly sustained as a result of the accident. Baumann is charged with several *560 specifications of negligence, chiefly that he was driving on the wrong side of the road.
The matter was tried on its merits in the lower court, and the defendants have perfected this appeal from the judgment rendered in favor of plaintiff. The judgment awards Melvin L. Joffre, individually, $86.35 for losses sustained and expenses incurred, and for the use and benefit of his son, Melvin, the sum of $2,219.25 for property damage and personal injuries, and for his son, Ronald, $500 for his injuries.
The only defense raised in argument before us is that young Melvin Joffre was guilty of contributory negligence in failing to keep his motorcycle under control and in not keeping a proper lookout. The negligence of Baumann being conceded by virtue of the plea of contributory negligence, it only remains to investigate the conduct of Melvin Joffre and to determine if he was guilty of negligence proximately contributing to the accident in the particulars set up in the special plea.
Melvin Joffre never saw the truck until it was "4 or 5 car lengths, maybe" away from him. He does not know whether Baumann came out of the line of traffic in the other lane or from the shoulder of the road, "or where," although he states he was keeping a lookout ahead. Upon sighting the truck, his impulse was to apply his brakes and endeavor to get out of its way, but his efforts were ineffectual and the vehicles collided.
Ronald, like his brother Melvin, was oblivious of the presence of the truck in the wrong lane; he explained that his position behind Melvin on the "Buddy" seat afforded him no forward view. It was not until the brakes were applied did Ronald look forward over Melvin's shoulder, and it was then he first observed the truck immediately in front of them.
Baumann testified to the effect that he left the line of stationary traffic and entered the left lane some distance away from the point of impact. He maintains that he traveled in the left lane about 1¾ blocks before seeing the motorcycle which was then about one-half of a block away. He says he slackened his speed from 15 to 12 miles per hour, but nevertheless continued his forward course. He admits he made no application of his brakes until the collision was imminent.
No other witnesses were able to testify as to the focal point in the case, i.e., where Baumann left the line of cars to enter upon the left or open lane.
Notwithstanding that Baumann's uncontradicted testimony is that he entered the left lane and had traveled about 1¾ blocks before he saw the motorcycle one-half of a block away, the trial judge made the deduction and reached the conclusion that the truck did not proceed on the left-hand side of the road for the distance which the driver claims but rather that the reason the two motorists did not see each other until an instant before the crash occurred was because the driver of the truck entered the left lane only a short time before and a short distance from the point of the collision. This finding was palpable error. There is nothing in the record which leads us to believe that Baumann left the line of stationary cars in close proximity to the oncoming motorcycle, and his statement that he had driven a considerable distance in the open lane before encountering the motorcycle cannot be ignored or brushed aside. Nor is there anything appearing therein which can be construed in such manner as to have the effect of discrediting Baumann's testimony or of casting doubt as to his veracity, and thus the conclusion is inescapable that the young driver was neither keeping any semblance of a forward lookout as he drove the motorcycle along Fourth Street nor had his vehicle under proper control, else he would have observed the approaching truck in ample time to have taken some effective measures to avoid crashing headlong into it. The law imposes *561 upon one who operates a motor vehicle the duty of looking and being at all times vigilant. This is a duty which never ceases. The motorist must see what can be seen and in legal contemplation does see, and any failure on the part of the motorist to observe and be cognizant of what could have been seen by the exercise of diligence and caution constitutes negligence. See Mansfield v. Toye Bros. Yellow Cab Co., La.App., 78 So.2d 544; Anderson v. Morgan City Canning Co., La.App., 73 So.2d 196; Maher v. New Orleans Linen Supply Co., La.App., 41 So.2d 101; Mahne v. Steele, La.App., 32 So. 2d 761, and many other cases. Had Melvin Joffre been looking ahead, he would have observed the truck proceeding on the left-hand side of the highway and would have become immediately cognizant of the fact that the truck could neither get back into its proper lane because of the unbroken line of stationary vehicles standing therein, nor be driven onto the dirt shoulder of the road because of the narrow width thereof. There was no impediment to his view, as Fourth Street at that point was straight for a considerable distance forward and the day was bright and clear. The perils of the situation were fully apparent, but to these young Joffre was entirely oblivious. We are warranted in the opinion that defendants have fully established the defense that Melvin Joffre was guilty of concurrent negligence which proximately contributed to the accident, and the record makes it abundantly certain that such negligence on his part continued down to the very moment of the crash between the vehicles.
However, counsel for plaintiff, in the alternative, seek to invoke on behalf of their client the doctrine of the last clear chance, or one of the offshoots thereof, discovered peril or apparent peril, and the argument is advanced that even if Melvin Joffre's contributory negligence appears as a fact, then defendants are in no better position and a recovery by plaintiff is in order, for the reason that Baumann admits he saw the motorcycle when it was one-half of a block distant from the truck, yet he did nothing to avoid running into it, although he had the means and opportunity of averting a crash.
Prior to the advent of Rottman v. Beverly, 1935, 183 La. 947, 165 So. 153, the state of the law with reference to the doctrine of the last clear chance was that the doctrine would not be extended to those cases where the plaintiff's own negligence was continuing and existed up to and actually contributed to the accident and injury. See cases of Callery v. Morgan's Louisiana & T. R. & S. S. Co., 139 La. 763, 72 So. 222; Castile v. O'Keefe, 138 La. 479, 70 So. 481; Wolf v. New Orleans Ry. & Light Co., 133 La. 891, 63 So. 392, and many others.
But in Rottman v. Beverly certain facts appeared which presented to the court for decision the question whether under those facts an exception to the rule of continuing negligence in cases involving the doctrine of the last chance could exist. The plaintiff in the case was a pedestrian who attempted to cross the highway diagonally and entered the highway without looking or listening and proceeded to cross with her head down paying not the slightest attention and seemed to be utterly oblivious to danger. The defendant driver of the automobile saw plaintiff's plight in ample time to make full use of his brakes as would have enabled him to avoid the accident. From the case evolved what is now known as the doctrine of discovered peril, it being held that although the plaintiff may have negligently placed herself in a dangerous situation, still the defendant is liable if he actually discovered the danger of the plaintiff and had an opportunity to avoid injuring her. The Supreme Court said [183 La. 947, 165 So. 156]:
"* * * if a plaintiff negligently puts himself in a place of danger and *562 his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. * * *"
In discussing the principle of continuing negligence in cases where the doctrine of the last clear chance was relied upon for recovery, the Court had this to say:
"It is frequently stated by courts that there can be no recovery in negligence cases `where it appears that the negligence of the plaintiff continued until the moment of the accident,' but that is not a correct statement of the rule. Thus broadly stated, it is misleading, for it is not true in a strict legal sense that a plaintiff is barred from recovery under any and all circumstances merely because he was guilty of negligence which continued down to the moment of the accident which caused his injury, and this court has never so held."
A short time later, in Jackson v. Cook, 189 La. 860, 181 So. 195, there was introduced into our jurisprudence what has come to be known as the doctrine of apparent peril. The Court in that case held that even though the plaintiff may have negligently put himself into a dangerous situation and even though the defendant has not actually discovered or become apprised of plaintiff's danger, still if the defendant by the exercise of ordinary care could have discovered it, the defendant is to be held responsible for the consequences of the accident for his having failed to avoid it.
Our opinion is that plaintiff's attempt to invoke the doctrine of the last clear chance or its extensions can be of no avail to him simply because the facts of the case do not warrant the application of the doctrine. This court is not now dealing with a pedestrian who unfortunately has gotten himself into a perilous situation from which he can do nothing to save himself and is injured because the defendant failed in his humanitarian duty of saving him from the consequences of his negligent act. The actors in the collision before us are two motorists, each of whom was guilty of concurrent negligence, as has already been stated, which negligence continued on down to the instant the vehicles came into contact, up to which point either motorist, had he been prudent and alert, could have done something to have avoided the accident. The doctrines enunciated in Rottman v. Beverly and Jackson v. Cook are merely exceptions to the general rule that the doctrine of the last clear chance will not be extended to cases where the plaintiff's own negligence extended up to and contributed to the injury. The facts of the instant case present no exception to the general rule, and we think that in view of the continuing negligence of Melvin Joffre, there is no room for the admission of the doctrine of the last clear chance.
It is elemental that the contributory negligence on the part of Melvin Joffre bars any recovery for and on his behalf. Nor can Melvin L. Joffre, the father and tutor, recover individually and for his own losses occasioned by the accident as his minor son's negligence is by law imputable to him. It is settled jurisprudence that the contributory negligence of an unemancipated minor who lives with him precludes the father from recovery for his damages. This proposition was fully discussed by us in Pancoast v. Cooperative Cab Co., La.App., 37 So.2d 452. See also Epps v. Standard Supply & Hardware Co., La.App., 4 So.2d 790; Curry v. Fendt, La.App., 94 So.2d 164. The same rule has application where the father is the tutor to the minor. LSA-C.C. art. 2318.
*563 Counsel for the defendants frankly concede that the status of Ronald Joffre was guest passenger on the motorcycle and also that the contributory negligence on Melvin Joffre's part is not imputable to him, and that he is entitled to a recovery. The sum of $500 was allowed for Ronald's use and benefit for the pain and suffering endured as a result of the accident, and defense counsel agree that the award is fair and equitable and should be affirmed. In view of this, it is unnecessary to discuss the nature of the injuries the boy sustained.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment insofar as it awards Melvin L. Joffre the sum of $86.35, individually, and the sum of $2,219.25 for the use and benefit of his minor son, Melvin Joffre, be reversed, and the judgment is now amended so as to dismiss the demands of Melvin L. Joffre, individually, and for the use and benefit of his son, Melvin Joffre, at the cost of plaintiff, and as thus amended and in all other respects the judgment is affirmed. Costs of this appeal are to be paid by defendants.
Reversed in part; affirmed in part.
REGAN, Judge (dissenting).
I respectfully dissent from that part of the judgment dismissing the suit of Melvin L. Joffre individually and for the use and benefit of his minor son Melvin Joffre.
Baumann, who was deliberately negligent in operating his vehicle against the flow of traffic, discovered the peril[1] of the Joffre boys when he was one-half block removed from them; at this moment he was in possession of the last clear chance to avoid the accident since the boys at that very moment were totally oblivious of his presence in the wrong traffic lane. Their attention was understandably relaxed because they were not anticipating that a motorist would so grossly violate the positive rules of the road. Hence, in evaluating the fault which is attributed to one who was operating his vehicle in obedience to the positive law, the court, I believe, should reason that the dereliction of Baumann was most substantial and that it was such a dominant and proximate cause that, without it, the accident would not have occurred.
The record clearly shows that after discovering their peril when he was approximately 150 feet removed from them, he made no effort whatsoever to avoid the impending accident; that is, he could have stopped since he was moving at approximately fifteen miles per hour, blown his horn to attract their attention, or swerved to the left and thus avoided the collision.
I am of the opinion that this case is encompassed by the rationale expressed by the Supreme Court in Rottman v. Beverly and Jackson v. Cook. In the latter case the organ of the Supreme Court said:
"Up to the time the Court of Appeal decided the Rottman case, Rottman v. Beverly, La.App., 162 So. 73, the jurisprudence relating to the last clear chance doctrine was confusing. This court in several cases had said in general terms that, where the negligence of a plaintiff continued up to the moment of the accident, there could be no recovery. Such statements had been made without qualification, and what we held in the Rottman Case was that such statements were too broad, and we qualified the rule by holding that, when a defendant sees another in peril of which the other is not aware, then a second or subsequent duty arises and devolves upon the defendant, which duty is to use every possible available means to avert injury. We said ([183 La. 947, 165 So. at] page 156):

*564 "`If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident.'"[2]
In view of what I have said, I am of the opinion that the judgment of the lower court should have been affirmed.
NOTES
[1] See Rottman v. Beverly, 1936, 183 La. 947, 165 So. 153; Jackson v. Cook, 1938, 189 La. 860, 181 So. 195.
[2] 1938, 189 La. 860, 868, 181 So. 195, 197.