134 So.2d 82 (1961)
Arthur W. HILTON and his wife, Mrs. Betty D. Hilton, Plaintiffs and Appellees,
v.
BANKERS FIRE & MARINE INSURANCE COMPANY, Defendant and Appellant.
No. 403.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1961.
*83 Watson, Williams & Brittain, by Arthur C. Watson, Natchitoches, for defendant-appellant.
John Makar, Natchitoches, for plaintiffs-appellees.
Before FRUGÉ, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This opinion applies not only to the above numbered and entitled appeal, but also to the companion cases of Thompson et al. v. Grain Dealers Mutual Insurance Company, bearing No. 402, La.App., 134 So.2d 88, and Silvia v. Grain Dealers Mutual Insurance Company et al., bearing No. 405 on the docket of this Court of Appeal, 134 So.2d 88, in which companion cases separate decisions are also being rendered this date. These three suits, which were consolidated *84 for trial in the lower court and for argument on appeal, arose out of a collision which occurred at about 7:30 a. m. on December 12, 1958, at the intersection of Fifth Street and Touline Street in the City of Natchitoches, Louisiana. Mrs. Melba L. Thompson was driving her 1957 Chevrolet station wagon west along Touline Street and was struck in said intersection by a 1958 Ford automobile being driven south along Fifth Street by Mrs. Betty Hilton. Mildred Silvia, a passenger in the Thompson vehicle, originally filed suit against the insurers of both the Thompson and Hilton automobiles, but previous to trial settled and compromised her claim as against Thompson's insurer, Bankers Fire & Marine Insurance Company, leaving at issue herein only her claim as against Hilton's insurer, Grain Dealers Mutual Insurance Company.
In a well considered written opinion the trial judge found that the accident was caused solely by the negligence of Mrs. Thompson in failing to yield the right of way to Mrs. Hilton who was traveling on the favored street. Consequently judgment was rendered against Mrs. Thompson's insurer, Bankers Fire & Marine Insurance Company, and in favor of Mrs. Hilton for the sum of $3,000 for her personal injuries, and in favor of her husband, A. W. Hilton, for the sum of $966.65 in special damages. Both the suit filed by Mildred Silvia and the suit filed by Mrs. Thompson and her husband against Hilton's insurer, Grain Dealers Mutual Insurance Company, were dismissed. The parties cast in these respective judgments have appealed. In the suit which she filed, Mrs. Hilton has answered the appeal seeking an increase in the award for personal injuries.
Addressing ourselves first to the issue of negligence on the part of Mrs. Thompson, we find her counsel contending at the outset, that although stop signs were present on Touline Street indicating that Fifth Street was the favored thoroughfare, there was no ordinance of the city of Natchitoches filed in evidence to show which of these streets had the right of way. We cannot agree with counsel in this contention because there was filed in evidence without objection a certified copy of Ordinance No. 393 of the city of Natchitoches adopted in 1936. Section 29 of which ordinance clearly establishes that Fifth Street, running north and south, has the right of way over Touline Street, which runs east and west.
The evidence shows that Mrs. Thompson was proceeding west on Touline Street approaching the intersection of Fifth Street; that both streets are paved and approximately 25 feet in width; that located on the northeast corner of said intersection is a large quonset building which obstructed vision from Touline Street north along Fifth Street; that Mrs. Thompson either stopped or slowed down for the intersection but she did so at a point from which she could not see north along Fifth Street, and consequently she started pulling out slowly to a position from which she could see around the quonset building; that although Mrs. Thompson testified she looked both to the left and to the right and saw no cars approaching, it is obvious from the physical facts of the collision that the Hilton automobile was approaching from Mrs. Thompson's right and was in clear view, very near the intersection, but Mrs. Thompson simply failed to see it; that on failing to see any approaching cars, Mrs. Thompson slowly accelerated and started across the intersection and when her vehicle reached such a position that its front end was slightly past the intersection and its rear end at about the middle of the intersection, the right rear portion of her vehicle was struck by the front portion of the Hilton automobile; that the collision occurred in the northwest quadrant of the intersection.
With regard to the actions of Mrs. Hilton, the facts show that she was proceeding south along Fifth Street toward the intersection at a speed within the legal limit of 25 miles per hour; that she saw the Thompson vehicle when it came into view from behind the quonset building and realized that Mrs. Thompson was not going to yield *85 the right of way; that Mrs. Hilton immediately applied her brakes, leaving about 12 feet of skid marks, but was unable to avoid the collision.
Under these facts the first argument presented by counsel for Mrs. Thompson is that she had pre-empted the intersection. This argument has no merit. The jurisprudence of this state is well established that in order to invoke the doctrine of pre-emption a person must not only show that he entered the intersection first, but he must also show that at the time of such entrance he had a reasonable opportunity and expectation of clearing the intersection without obstructing the crossing thereof by other vehicles. See McCoy v. State Farm Mutual Insurance Co., 129 So.2d 66 (3 Cir.App. 1961) and the many cases cited therein. In the instant case we have no difficulty in finding from the facts that although Mrs. Thompson actually entered the intersection first she did not have a reasonable expectation or opportunity of crossing the intersection without obstructing the movement of the Hilton vehicle. Clearly Mrs. Thompson cannot rely on the doctrine of pre-emption.
Under our reasoning set forth above we conclude that Mrs. Thompson was guilty of negligence in failing to yield the right of way to Mrs. Hilton. This brings us to Mrs. Thompson's next argument which is that the last clear chance doctrine is applicable here. The thrust of this argument is that Mrs. Hilton had a chance to avoid the accident after she saw the Thompson vehicle and realized that it was not going to stop. In the recent case of McCoy v. State Farm Mutual Insurance Co., supra, this court cited numerous cases and quoted the applicable law from Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, in which our Supreme Court held as follows:
"* * * The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such a motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law."
In the instant case, Mrs. Hilton testified that she saw the Thompson vehicle as soon as it appeared from behind the quonset building and realized that it was not going to stop. Whether or not Mrs. Hilton had a chance to avoid the accident, after making this observation, depends on the location of the quonset building and the locations and speeds of the two vehicles at the time. The evidence shows that the southwest corner of the quonset building is 33½ feet from the center line of Fifth Street. At the time of the impact the Thompson vehicle had reached a point where its rear end was approximately at the center line of Fifth Street and therefore it can be concluded that the front end of the Thompson vehicle had traversed a distance of approximately 45 feet past the corner of said building at the time of the collision. The Thompson vehicle was proceeding slowly but accelerating at a speed (as best we can determine from the evidence) of an average of about 10 miles per hour or 14½ feet per second which means that the Thompson vehicle progressed the stated distance of about 45 feet in approximately 3 seconds.
Mrs. Hilton testified that as soon as she saw the Thompson vehicle and realized that it was not going to stop, she immediately applied her brakes, leaving 12 feet of skid marks, but was unable to avoid the collision. At her stated speed of 25 miles per hour, Mrs. Hilton's stopping distance was approximately 61 feet, according to the chart filed in evidence (from the "Driver's Guide" issued by the Department of Public Safety of the State of Louisiana). Counsel for Mrs. Thompson, as well as counsel for Mildred Silvia, contends the evidence shows that Mrs. Hilton was much more that this 61 feet from the intersection at the time *86 she first saw the Thompson vehicle and realized that it was not going to stop. Counsel for Mildred Silvia argues that during the period of 3 seconds which it took the Thompson automobile to move from behind the quonset building to the point of impact, the Hilton vehicle, proceeding at 25 miles per hour, would have traveled a distance of 109.5 feet, which is much more that the 61 feet required for Mrs. Hilton to stop. The obvious fallacy in counsel's computation is that during this approximately 3 seconds period of time, Mrs. Hilton applied her brakes and therefore was not traveling 25 miles per hour during this entire period of time and did not have a distance of 109.5 feet within which to stop before striking the Thompson vehicle. In our opinion, it can be more logically argued from the stopping distance chart filed in evidence, that at a speed of 25 miles per hour Mrs. Hilton needed 61 feet within which to stop, of which 27½ feet was "thinking distance" and the remaining 33½ feet was "braking distance". Since the evidence shows that Mrs. Hilton's vehicle left 12 feet of skid marks and then crashed violently into the Thompson vehicle, it can be argued that this 12 feet of braking distance should be simply added to the thinking distance of 27½ feet, giving a total of 39½ feet as the distance of Mrs. Hilton's vehicle from the point of impact at the time she first observed the Thompson automobile.
Considering the evidence as a whole, it is our opinion that when Mrs. Hilton first saw the Thompson vehicle emerge from behind the quonset building and realized that it was not going to stop, she was already less than 61 feet from the point of impact and was too close to have a chance to avoid the accident. This conclusion is not only indicated by the speed and stopping distance computations set out above, but is in accord with the testimony of the witnesses. Mrs. Thompson testified that she never did see the Hilton vehicle before the impact, and so her testimony is of no assistance on this issue. Mildred Silvia, who was seated on the right of the rear seat of the Thompson station wagon, testified that as Mrs. Thompson pulled slowly out into the intersection she saw the Hilton car approaching, but didn't have time to say or do anything before the collision except throw her hands up in front of her face. As stated above, Mrs. Hilton testified that as she was proceeding south on Fifth Street at a speed of about 25 miles per hour, she had reached a point about 2 car lengths from the intersection when she first saw the Thompson automobile and that she immediately applied her brakes, but was unable to stop in time to avoid the accident. It is therefore our conclusion that the last clear chance doctrine has no application to the instant case.
The final argument advanced by able counsel for Mildred Silvia is under the jurisprudence which requires the exercise of greater than ordinary care where the view of a driver is obstructed. See Davis v. Great American Indemnity Co., 76 So.2d 103 (2 Cir.App.1954) and the cases cited therein. Under these authorities, counsel for Mildred Silvia argues that Mrs. Hilton had traveled this route many times before and knew her vision along Touline Street to the east was obstructed by the quonset building; that, therefore, she should have had her car under such control and should have actually slowed down if necessary in order to be able to stop in the event another vehicle came out of said blind intersection.
In our opinion the law applicable in this situation is set forth correctly in the case of Janice v. Whitley, 111 So.2d 852, 855 (1 Cir.App.1959) in which the court held as follows:
"A fair construction of plaintiff's driver's testimony evidences that prior to her entry she made observation to her left but failed to perceive Whitley's car approaching because of a store building on the corner obstructing her view. While the driver on the less favored street may be held negligent for entering when his view of traffic approaching the intersection is obstructed by a blind corner (Ehtor v. Parish, *87 La.App.Orleans, 86 So.2d 543), we have pointed out that the driver on the favored street is ordinarily not contributorily negligent in proceeding past a blind corner into an intersection at a reasonable speed, nor for failing to observe the approach of vehicles on less favored intersecting streets when the view is blocked. Stevens v. Delanoix, La.App. 1 Cir., 96 So.2d 844; Brashears v. Tyson, La.App. 1 Cir., 86 So.2d 255. See also: Turner v. Southern Farm Bureau Cas. Co., La.App. 2 Cir., 91 So.2d 436; Stovall v. Washington, La.App.Orleans, 88 So.2d 483; Parish v. Ehtor, La.App. Orleans, 86 So.2d 548; Lewis v. Groetsch, La.App.Orleans, 32 So.2d 396.
"In these cases, some concerning facts almost identical to the present, the favored driver was held entitled to proceed into the intersection upon the assumption that motorists on the side street would respect his right of way. Basically, this is because otherwise, in derogation of the legislative purpose in providing for the right of way, all traffic would have to come to a standstill at such intersections."
In the instant case Mrs. Hilton did not slow down in contemplation of this blind corner, but she was traveling at a legal and reasonable speed. She did observe carefully, and actually saw the Thompson automobile as soon as it emerged from behind the quonset building. Under the above quoted law she was not required to decrease her speed and this is the only respect in which it can be argued that she was negligent under the circumstances of this case.
For the reasons outlined above, it is our opinion that this collision was caused solely by the negligence of Mrs. Thompson and that therefore both her suit and the suit filed by Mildred Silvia were properly dismissed.
The final remaining issue is the quantum of damages to be allowed Mrs. Hilton and her husband. The evidence shows that as a result of this accident Mrs. Hilton, a 28 year old white female, suffered what is commonly called a "whiplash" injury to her neck. She first went to see Dr. Archie Breazealle, Jr., a general practitioner of Natchitoches, during December of 1958 and he prescribed medicine for pain. Her condition did not improve and consequently Dr. Breazealle placed her in the hospital from January 6 through January 10 under treatment which consisted of traction, and medicine for the relief of pain. On release from the hospital she returned home where she remained in a traction device for another five or six weeks. Dr. Breazealle referred her to Dr. Ford J. Macphearson, an orthopedic specialist of Shreveport. Dr. Macphearson examined Mrs. Hilton on May 12, 1959 and diagnosed that she had suffered a whiplash injury from which she had only minimal residual discomfort on turning her head to the right. Dr. Macphearson took x-rays from which he diagnosed what he called a "suspicion" of a healed fracture of the third neck vertebra, but the fracture was in good position and of no consequence. This specialist's prognosis was that Mrs. Hilton would continue to have discomfort for from three to six months from the date of his examination, after which she would have no further residual effects of this injury until possibly in her old age she might be predisposed to premature arthritis.
Mrs. Hilton did not return to see either Dr. Breazealle or Dr. Macphearson after May of 1959, but at the request of counsel for defendant, she was examined on December 4, 1959 by Dr. Willis J. Taylor, an orthopedic specialist. Dr. Taylor found no objective symptoms and expressed the opinion that Mrs. Hilton had completely recovered from whatever injuries she had suffered.
Under these facts, it is our opinion that the lower court's award of $3,000 to Mrs. Hilton is in line with our recent jurisprudence and is neither inadequate nor excessive. See Landry v. Southern Farm Bureau *88 Casualty Ins. Co., 125 So.2d 474 (3 Cir.App. 1961) and the cases cited therein. The award to Mr. Arthur W. Hilton for special damages is not contested on appeal and therefore will not be disturbed.
For the reasons hereinabove set forth, the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendant, Bankers Fire & Marine Insurance Company.
Affirmed.