151 So.2d 172 (1963)
Oscar L. BIGGS, Plaintiff-Appellee,
v.
George M. VERBOIS, Sammie P. Verbois, and Indiana Lumbermens Mutual Insurance Company, Defendants-Appellants.
No. 5772.
Court of Appeal of Louisiana, First Circuit.
February 22, 1963.
Rehearing Denied March 29, 1963.
Certiorari Refused May 14, 1963.
*173 Kantrow, Spaht & Kleinpeter, by Carlos G. Spaht, Baton Rouge, for appellants.
Strickland & Cole, by J. W. Cole, Jr., Port Allen, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
On October 31st, 1960 at about 4:30 P.M. Patricia Biggs, eleven year old daughter of the plaintiff, was riding her bicycle in a northerly direction on Longfellow Drive in the City of Baton Rouge, Louisiana, and while attempting to cross the intersection of Longfellow Drive with Evangeline Street was struck and seriously injured by an automobile belonging to the defendant, George M. Verbois, and being driven at the time by his wife, Mrs. Sammie Verbois, which resulted in the institution of the present suit by the plaintiff individually for loss of time from business operation, which necessitated additional help in the sum of $500.00, medical expenses including hospital bills, doctor bills, drugs, hospital equipment, etc., in the sum of $1,468.00 and estimated future medical expenses in the sum of $1000.00 or a total of $2468.00. Plaintiff is also suing in behalf of his daughter, Patricia Biggs, for shock, physical pain and suffering in the sum of $10,000.00 and permanent future disability in the sum of $15,000.00.
The case was duly tried, and for oral reasons assigned, judgment was rendered in favor of the plaintiff individually in the sum of $1468.00, together with legal interest from date of judicial demand until paid and for all costs, and for the use and benefit of his minor child, Patricia Biggs, and against the defendants, George M. Verbois, Sammie P. Verbois and Indiana Lumbermens Mutual Insurance Company, jointly and in solido, in the full sum of $6,500.00, together with legal interest from date of judicial demand until paid.
From this judgment the defendants have suspensively appealed.
The Specification of Errors set forth by counsel for defendant is as follows:
"1. The trial court erred in finding the driver of an automobile guilty of negligence where such driver was proceeding at a lawful rate of speed on a right of way street and collided with a bicycle at an intersection where the bicycle rider ran the stop signs requiring traffic entering such intersection to stop and yield the right of way to traffic entering or nearing such intersection, even though such auto driver failed to see the bicycle until shortly before the accident because even if the driver had seen such bicycle rider, some distance prior to entering the intersection, she would have the right to assume that such rider would obey the law and bring her bicycle to a stop and allow the closely approaching automobile to proceed on through the intersection.
"2. The trial court erred in holding that the last clear chance doctrine has any application where the facts are as shown in this case, that is, where there was an intersectional collision between an automobile and a bicycle where the driver on the right of way street collided with the bicycle rider on an inferior street where both vehicles entered the intersection at about the same time for the following reasons:
"(a) The bicycle rider was not in a position of helpless peril for such time as the automobile driver saw or should *174 have seen her and had an opportunity to avoid striking her.
"(b) For the negligent plaintiff to be given the benefit of the discovered peril or last clear chance doctrine, he must prove three things: (1) plaintiff in a position of peril of which he is unaware or unable to extricate himself; (2) defendant in a position where he actually discovered or should have discovered the plaintiff's peril; (3) at such time that the defendant could have by the exercise of reasonable care, avoided the accident.
"(c) The active negligence of the bicycle rider continued down to the very moment of the accident."
Counsel for the defendant in his specification of errors, paragraph (b) has correctly stated the three things that a negligent plaintiff must prove in order to be given the benefit of the last clear chance doctrine. The test set forth in counsel's specification of errors has been approved and applied in innumerable cases which presented the question of the application of the last clear chance, and we fully accept the soundness of the discussion of the application of the doctrine and the necessity of proof by the plaintiff of the three elements necessary for its application as set forth in the recent case of Lavigne et al. v. Southern Farm Bureau Casualty Company, La.App., 125 So.2d 430, cited and relied upon by counsel for defendants.
In support of Specification of Errors No. 1, counsel stated in his brief that our jurisprudence is replete with cases holding that the driver on a right of way street has the right to assume the drivers of other vehicles approaching the intersection on inferior streets will obey the traffic laws and allow the driver on the right of way street to proceed across. In support of this statement he cites Benoit v. Vincent, 1961, La.App., 132 So.2d 75, in which the Court stated:
"The driver with the right of way is ordinarily entitled to proceed towards and into the intersection upon the assumption that inferior traffic will respect his superior right to proceed, unless he should reasonably realize in time to avoid an accident that the inferior traffic will continue into the intersection in disregard of the right of way. Randall v. Baton Rouge Bus Co., 240 La. 527, 124 So.2d 535; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Henderson v. Central Mutual Ins. Co., 238 La. 250, 115 So.2d 339; Steele for Use and Benefit of Steele v. State Farm Mutual Ins. Co., 235 La. 564, 105 So.2d 222; Fontenot v. Liberty Mutual Ins. Co., La.App., 3 Cir., 130 So.2d 462; Warner v. Insurance Co. of State of Pennsylvania, La.App., 3 Cir., 129 So.2d 320; Hernandez v. State Farm Mutual Auto Ins. Co., La.App., 3 Cir., 128 So.2d 833; Andrea v. Hicks, La.App. 3 Cir., 125 So.2d 251." (Emphasis added.)
Also, Central Louisiana Electric Company v. Hodges et al. (La.App.3rd Cir. 1962), 137 So.2d 132; wherein the Court stated:
"The motorist on a right-of-way street, with knowledge of the location of a stop sign warning motorists approaching from an inferior intersecting street to stop, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe the law. Koob v. Cooperative Cab Co., 213 La. 903, 904, 35 So.2d 849; McCoy v. State Farm Mutual Ins. Co., La.App. 3 Cir., 129 So.2d 66; Benoit v. Vincent, La.App. 3 Cir., 132 So.2d 73." (Emphasis added)
And, finally, counsel cited in support of Specification of Error No. 1 as well as No. 2, which is strictly applicable to the doctrine *175 of last clear chance, the case of Lavigne et al. v. Southern Farm Bureau Casualty Company, La.App., 125 So.2d 430. We fully accept the law as stated in these cases cited as applicable to Specification of Errors No. 1 and No. 2 and the quote contained in the brief of counsel for defendant from the last cited case in which the Court stated:
"The driver with the right-of-way is ordinarily entitled to proceed toward and into an intersection upon the assumption that inferior traffic will respect his superior right to proceed, unless he could reasonably realize in time to avoid an accident that the inferior traffic will continue into the intersection. Koob v. Cooperative Cab Co., 1948, 213 La. 903, 35 So.2d 849; Steele, for Use and Benefit of Steele v. State Farm Mutual Ins. Co., 1958, 235 La. 564, 105 So.2d 222; Stevens v. Delanoix, La.App.1957, 96 So.2d 844; Guillory v. Frank, La.App.1957, 95 So.2d 197; Commercial Credit Corp. v. Serpas, La.App.1957, 94 So.2d 83; Janice v. Whitley, La.App.1959, 111 So.2d 852; Brown v. Checker Cab Co., La.App.1960, 119 So.2d 513; Starnes v. Mury, La.App.1956, 90 So.2d 901; Miller v. Abshire, La.App.1953, 68 So.2d 143; Droddy v. Southern Bus Lines, La.App.1946, 26 So.2d 761. In this case it appears to us that since the Thomas truck was on the right-of-way street, the driver of that vehicle had the right to assume that the decedent or any other motorist approaching from the inferior street would obey the law and would respect his superior right to proceed. The truck was being driven at a reasonable rate of speed, and there is nothing in the evidence to indicate that Thomas should have realized in time to avoid the accident that the decedent would continue into the intersection.
"The law is also settled to the effect that when confronted with a stop sign erected by the proper officials of the city, in addition to being legally obligated to bring his vehicle to a complete stop, a motorist is held to the duty of appraising traffic in the intersecting street and of making certain that the way is clear for him to make a safe passage across the intersection. When a motorist stops his vehicle before entering a right-of-way street he has performed only half of the duty which the law has imposed upon him. To stop and then proceed forward in the immediate path of oncoming vehicles constitutes gross negligence. Smith v. Travelers' Ins. Co., La.App.1946, 28 So.2d 147; Hooper v. Toye Brothers Yellow Cab Co., La.App.1951, 50 So.2d 829; Volz v. Fertel, La.App.1957, 95 So.2d 383; Ehtor v. Parish, La.App.1956, 86 So.2d 543; Brown v. Checker Cab Co., supra; Hardware Dealers Mutual Fire Ins. Co. v. Meyers, La.App.1960, 119 So.2d 572. In this case it is apparent that the decedent, whether he did or did not stop at the intersection, failed to exercise reasonable care in appraising traffic before proceeding to cross Rozas Street.

* * * * * *
"The lower court further held, however, that in spite of the negligence of decedent, plaintiff is entitled to recover under the doctrine of last clear chance. For the successful invocation of the doctrine of last clear chance, the existence of presence of three essential elements must be established: First, that the other person was in a position of peril of which he was unaware or from which he was unable to extricate himself; second, that the person against whom such doctrine is charged actually discovered or was in a position where he should have and could have discovered such other person's peril; and, third, that at the time the person charged with responsibility could have, with the exercise of reasonable care, avoided the accident. Russo v. Texas & Pacific R. Co., 1938, 189 La. 1042, 181 So. 485; Newton v. Pacillo, La.App.1959, 111 So.2d 895; Moore v. *176 Shreveport Transit Co., La.App.1959, 115 So.2d 218.
"When the decedent entered the intersection in front of the approaching truck he obviously was in a position of peril of which he was unaware or from which he was unable to extricate himself. The evidence fails to establish, however, that the driver of the Thomas truck actually discovered or was in a position where he could or should have discovered the decedent's peril in time to have avoided the accident. There is nothing in the record to justify a conclusion that the driver of the defendant truck, by exercising reasonable care, could have avoided the accident after he should have become aware of the danger.
"The facts in this case are similar to those in Clark v. Shannon, La.App.1960, 120 So.2d 307, 308, where the Court of Appeal, Second Circuit, in holding that the doctrine of last clear chance was not applicable, said:
"`Nor can we find from our examination of the record any facts which would support the application of the doctrine of last clear chance. The defendant, Shannon, was on a right-of-way thoroughfare, and his negligence in failing to perceive the approach of the Clark automobile was no more the proximate cause of the accident than Clark's obviously concurrent failure to perceive the approach of Shannon's car and respect the preferred status of its right to pass through the intersection. It is too well established to require citation of authority, that the doctrine of last clear chance is applied only in instances where the facts indicate the reasonable possibility of the avoidance of an accident despite the contributory negligence of the other driver. There are no established facts in the instant case which would support the conclusion that Shannon had the opportunity to avoid the collision.'"
Also cited by counsel on Specification of Error No. 2 are the cases of Maryland Cas. Co. v. Allstate Ins. Co., La.App., 96 So.2d 340; Breaux v. Meyers et al., La.App., 132 So.2d 77; Joffre v. Ike Haggert Machine Works, Inc., La.App., 100 So.2d 557; Hilton et al. v. Bankers Fire & Marine Ins. Co., La.App., 134 So.2d 82; Wells v. Meshell, La.App., 115 So.2d 648; Carlson v. Fidelity Mutual Ins. Co., La.App., 88 So.2d 461; Nugent v. Milburn et al., La.App., 47 So.2d 377; Williamson v. State Farm Mutual Auto Ins. Co., La.App., 84 So.2d 243; Theriot v. Marquette Cas. Co., La.App., 111 So.2d 799, and Guillory v. Frank, La.App., 95 So.2d 197.
After citation of the above authorities in support of his Specification of Errors, counsel for defendant in his brief sums up his position as follows:
"We therefore submit that Mrs. Verbois was not guilty of any negligence in this matter because she was proceeding on the right of way street and she had a right to assume that the bicycle rider would observe her right of way and allow her to proceed on across the intersection. She could only know that the girl on the bicycle was not going to observe her right of way after she passed the stop sign at the intersection. As heretofore shown, the bicycle went only 12 feet into the intersection when the collision occurred. Thus, there was no way on earth for Mrs. Verbois to avoid this accident and it does not matter that because of the sun in her fact (sic) she did not see the bicycle until shortly before she struck it."
The main difference between counsel is as to the proper conclusion to be drawn from the facts which are really not in serious dispute. It is shown that Evangeline Street at its intersection with Longfellow Drive is 20 feet in width and that Longfellow Drive on the south of the intersection is a two lane thoroughfare with a stop sign for traffic traveling north, located 12 feet back from the intersection. This stop sign is clearly visible to motorists for several *177 hundred feet east of this intersection traveling west in the north lane of travel on Evangeline Street. As a matter of fact, Mrs. Verbois testified frankly that there was no obstructions to vision at this intersection as the houses were set back, and judging from the photographs introduced in evidence there is at least 24 feet back from the intersection that is clear of any obstruction to vision. The point of impact was established by the investigating officer as being 12 feet west of the east parallel line of Longfellow Drive and 8 feet south of the north parallel line of Evangeline Street and 12 feet north of the south parallel line of Evangeline Street. The bicycle was struck at approximately the pedal, which is just to the rear of the front wheel, which would mean that the forward motion of the bicycle at the moment of the impact was approximately two feet north of this latter point or fourteen feet north of the south parallel line of Evangeline Street. In other words, the car had traveled 12 feet into the intersection and the child on her bicycle had traveled 14 feet at the moment of impact and 26 feet from the stop sign. The officer also found skid marks which began five feet before the point of impact and continued approximately 25 feet thereafter, or a total of 30 feet of skid marks made by the Verbois car.
Counsel for plaintiff in his brief raises the question of whether the beginning of the skid marks was made by the front or the rear wheels and, therefore, whether the 12 foot distance between the two wheels should be deducted from the 30 feet in estimating the speed of the car. No such question was raised on the trial of the case, and as it is not shown there was anything wrong with the four wheel brakes on the Buick automobile and the officer testified on this point without questioning along the line suggested by counsel for plaintiff that the overall skid marks were 30 feet in length, we accept his testimony literally that the beginning of the skid marks were made by the rear wheels and that the car actually skidded 30 feet. This finding is somewhat corroborated by the testimony of the investigating officer as to the location of the car after the collision. He testified that the point of impact was to the left of the center on the front bumper of the car and that it was veering to the northwest and when it came to rest "* * * The car was sitting, as it was headed toward the ditch, I would say, on the northwest corner and over to the side of the road. It was partially on the road, though." By stipulation in the record it is shown that Longfellow Drive is a boulevard separated by a neutral ground north of Evangeline Street and is a two lane street having one lane of travel for each direction to the south of Evangeline Street; that on the north Longfellow Drive on the western side of the neutral ground is 17 feet wide between its east and west parallel lines, the neutral ground is 17 feet wide, and the eastern portion of the boulevard, that is, the street, is 18 feet between its parallel lines. It is further shown by a sketch on the police report which has been introduced in evidence that a continuation of the eastern boundary line of Longfellow Drive on the south of the intersection, if extended to the north boundary line of Evangeline Street, would squarely meet the eastern boundary line of that street north of the intersection. Therefore, the width of Longfellow Drive on the north side of Evangeline Street is 52 feet, which would easily accommodate the 30 foot skid by the automobile after deducting the 7 feet the automobile traveled in the intersection prior to the beginning of the skid marks and ending up as described in the northwest corner of the northwest quadrant of the intersection.
Distinguished counsel for the defendant contends that the 30 foot skid marks is practically irrefutable evidence that the defendant's car was being driven at 25 miles per hour or slightly less, although he readily admits, and it is a fact, that Mrs. Verbois testified in deposition and on the trial of the case that she was going from 30 to 35 miles per hour at the time she began to apply her brakes. It is within *178 the realm of probability, and most assuredly possibility, that Mrs. Verbois was traveling at 30 miles per hour, which might be explained by the fact that she had an above the average reaction response. For example, one quarter of a second faster reaction than the average person would deduct approximately nine feet from the 27½ feet ordinarily taken by the three quarter of a second reaction for the average normal driver. However, we will accept the 25 miles per hour as there is no testimony that she was any different insofar as her reaction responses were concerned. While counsel has cited the stopping distance chart in Blashfield Cyclopedia of Automobile Law and Practice, § 6237, which shows that at 30 miles per hour the average driver takes 33 feet of thinking distance or reaction time, 40 feet of braking distance, due to the fact that it does not contain stopping distance based upon 25 miles per hour he uses the chart put out by the Louisiana State Department of Public Safety which does estimate these distances at that speed and it shows that at 25 miles per hour, the average driver has a reaction time of ¾ seconds and goes 27½ feet and takes 33½ feet of braking distance.
From the above facts the rear wheels of Mrs. Verbois' Buick automobile were 27½ feet from the beginning of the skid marks, 5 feet east of the point of impact at the beginning of the ¾ of a second reaction time, and the front portion of the front bumper was therefore approximately 13 to 14 feet further toward the west or within 13½ to 14½ feet from the point the rear wheels began to skid, making a total distance of approximately 18½ to 19½ feet from the front bumper of the car to the point of impact at the beginning of the reaction time of ¾ of a second when Mrs. Verbois first realized the perilous situation of the child on the bicycle and that a collision was practically certain. She testified on her deposition, as brought out on direct examination by counsel for defendants, that she did not see the child on the bicycle until the moment of impact, or just as she hit her. In fact, she testified on the deposition that she did not see the little girl until she hit her. Counsel for defendants in questioning Mrs. Verbois on the trial of the case made the following statement in his questioning: "* * * You think, though, now, that you did see some motion off your left before the time the car struck? A. Just some motion. I didn't know it was the girl, but I, it was just a flicker."
Further on the trial of the case Mrs. Verbois frankly stated, when asked if she had any idea how far she was from this little girl on the bicycle when she applied her brakes, answered, "No sir, I don't know." She also frankly testified that there was nothing to obstruct her view and that she could see a vehicle (it has been held that a bicycle comes within this category) stopped for the stop sign as she approached on Evangeline Street, and that there was nothing to keep her from seeing a vehicle which came to that stop sign and did not stop for it. We believe that Mrs. Verbois was telling the truth as nearly as humanly possible when she stated that she did not see the child on the bicycle until she hit her and later described it as "just some motion. But I didn't know it was a girl, but I, it was just a flicker," an instant before the impact, for the bumper of the car struck the child within ½ of a second after the beginning of the ¾ of a second reaction time.
As to Patricia Biggs, the doctor described her as having been "for a period of years carrying excess weight" and the facts show that on that date she had been to school which is located some six blocks from her home and had ridden her bicycle from her home some ten or twelve blocks to keep an appointment with a school mate who was buying some material to be used on that Halloween Night, and was on her return home when the accident occurred. The record does not show how far the location of the accident was from the place she was to meet the school mate. Also, she testified that she was riding slowly. She testified that she could not remember whether she stopped at the stop sign nor whether she *179 looked, however, she did at first testify that she had looked both ways on Evangeline Street. We are convinced from her testimony that she approached the stop sign without stopping, passed it and rode into the intersection without looking to the left or to the right. Patricia further testified that she first saw the automobile approaching from the east toward the west on Evangeline Street when she was in about the middle of the street, and that she realized that there was nothing she could do and that she kept going. We are convinced that she was practically at the point of impact when she first saw the car and at that time she realized that she was going to be struck.
There was an eye witness to this accident who was unable to testify upon the advice of his doctor, and counsel entered into the following stipulation:
"If Mr. John A. Beckman were called to testify, his testimony would be as follows: That on Monday, October 31, 1960, at approximately 4:45 P.M., he was standing on the southeast corner of the intersection of Evangeline Street and Longfellow Drive in the City of Baton Rouge; that he saw Patricia Biggs riding a bicycle in a northerly direction on Longfellow Drive to the south of Evangeline Street; that he saw her when she was approximately one hundred (100) feet from the intersection coming toward him; that as she rode into the intersection, she did not look to the left or to the right and did not stop at the stop sign located on the corner of Longfellow Drive."
While Counsel for plaintiff does not admit that Patricia was guilty of any negligence but contends that she exercised all the caution expected of an 11 year old child, and argues the theory of the last clear chance as to Mrs. Verbois, only in the alternative, we are not impressed with the seriousness of his contention that Patricia was not guilty of any negligence, for the facts amply convict her of negligence. We will not cite a long list of authorities that she was of a sufficient age to be chargeable with contributory negligence.

Specification of Error No. 1.
Under this specification counsel for the defendant contends that the trial court erred in finding Mrs. Verbois guilty of negligence, even though she failed to see the bicycle until shortly before the accident because had she seen the child on the bicycle some distance prior to entering the intersection, she would have had the right to assume that the rider would obey the law and bring her bicycle to a stop and allow the closely approaching automobile to proceed on through the intersection. Counsel is correct, but such an assumption upon the part of Mrs. Verbois is subject to the restriction "unless he should reasonably realize in time to avoid an accident that the inferior traffic will continue into the intersection in disregard of the right of way", cases supra, or as stated in other cases, supra, "such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe the law."
Also particularly applicable to the case at bar are the statements of the Supreme Court of the State of Louisiana in its consideration of Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535, as to the duty of a motorist on a favored street to exercise ordinary care and we quote therefrom:
"If the looking is at a time and in a space too short for the person looking to take action to prevent the impending peril discovered by the looking, then the duty to look becomes a vain and useless act and he need not have looked in the first place. We think that the duty of a motorist on a favored street to exercise ordinary care requires that he maintain at all times a proper lookout. A proper lookout means that he should see the obvious, * * *".
"The bus driver stated that he probably could have seen the Randall car *180 approaching at a distance of 90 feet if he had been looking specifically for a car. The duty to look does not specify that you look for any particular object, but requires that you look for any and all objects that might appear to impede or endanger your safe operation of your vehicle, even though the traffic engineers have accorded you the right of way and notified other motorists of that fact by the proper posting of signs indicating same.
"The law does not require and the courts have held in numerous cases that you are not called upon to anticipate that others will not heed and obey traffic lights, signs and laws, but on the contrary you have the right to assume that they will. Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Bahry v. Folse supra [La.App., 83 So.2d 912]; and White v. Travelers Insurance Company, La.App.2nd Cir., 94 So.2d 564. However, when you look and see, or should have looked and could have seen, that another, by obvious actions is about to ignore the signs then it is your duty to protect him as well as yourself by using your best judgment under the circumstances and avoiding or minimizing any impending peril."
In this same case (Randall v. Baton Rouge Bus Co., supra) there is a concurring opinion by Justice McCaleb in which he stated:
"* * * Under all of our latest cases, we have given increasing recognition to the right of the motorist travelling on right-of-way streets to indulge in the assumption that traffic approaching intersections from less favored streets will observe the law and it is only in exceptional circumstances where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431." (Emphasis added)
Bearing in mind the above and foregoing settled principles of law, Mrs. Verbois did not exercise the ordinary care required of the motorist on the favored street by maintaining at all times a proper lookout, which means that she should have seen "the obvious", which was the child on the bicycle proceeding slowly toward the intersection, without slowing down for the stop sign or intersection or looking to the left or right, which actions of the child were obvious to Mr. Beckman and would have been to Mrs. Verbois had she been keeping a proper lookout. Mrs. Verbois should have observed the child on the bicycle before the latter reached the stop sign as she was clearly within her range of vision, and under the settled jurisprudence of this state motorists must exercise a greater care where they see children playing along the street or traveling in their lane of traffic or approaching, as in the present case, an intersection. We will agree with counsel for the defendant that Mrs. Verbois "could only know that the girl on the bicycle was not going to observe her right-of-way after she passed the stop sign at the intersection." Although Mrs. Verbois did not see the child on the bicycle when she passed the intersection, "by the exercise of the slightest sort of observation," she could and should have seen her and would have immediately perceived by the obvious actions of the child on the bicycle that she was going to ignore the stop sign and proceed into the intersection. Therefore, when Patricia Biggs passed the stop sign in the manner and method described, Mrs. Verbois *181 could no longer assume that she was going to respect her superior right to proceed, but on the contrary would have immediately realized and observed that Patricia was going to continue into the intersection in disregard of her right-of-way. For the above and foregoing reasons the trial judge did not commit error in holding that Mrs. Verbois could not rely upon the assumption that Patricia Biggs would obey the law and bring her bicycle to a stop and allow her to proceed through the intersection.

Specification of Error No. 2.
The question posed is whether the trial court erred in holding that the last clear chance doctrine was applicable under the facts in this case. There can be no doubt from the testimony in this case but that Patricia Biggs was in a position of peril of which she was unaware as shown by a previous discussion of the facts. Secondly, Mrs. Verbois was in a position where she should have discovered the child's peril for there was not the least obstruction to interfere with her clear vision of not only the entire intersection but for a distance south of the stop sign which was located 12 feet from the intersection. From the photographs introduced in evidence and the record itself, we believe that Mrs. Verbois could have seen this intersection and the stop sign several hundred feet, and without a doubt 150 feet, while traveling in the north traffic lane in a westerly direction. For some unexplainable reason, she was evidently so oblivious to her surroundings that when asked if there were any cars parked on the side of Evangeline Street as she approached the intersection she answered: "I didn't look to the sides. * * *". In one instance in her testimony, when asked whether she had maintained the same speed after crossing Plank Road of 30 to 35 miles per hour or whether she thought she had slowed down some, she stated: "Well, I probably slowed down a little bit because the sun was blinding me as I crossed the Plank Road." At no time or place in her testimony did she state that due to the sun blinding her she had been unable to see the child on the bicycle prior to hitting her. Such testimony would not excuse her from keeping a proper lookout, for under such conditions the law demands that a motorist bring their car under such control by slowing the speed, that it can be controlled within the range of their vision. Under the facts, Mrs. Verbois should have discovered the child's peril after she passed the stop sign, as it is perfectly obvious that she had no intention of stopping there or at the intersection, and at the latest she should have realized beyond any doubt when the child arrived at the intersection on her bicycle that she had no intention of stopping. At either stage of Patricia Biggs' journey toward the intersection Mrs. Verbois was such a distance that had she been keeping a proper lookout, she had the time and could have, by the exercise of reasonable care, avoided the accident. Counsel for defendants suggests or states that possibly the car was going four times faster than the bicycle. While we believe that it was traveling more than likely at least 5 times faster than the bicycle, which was traveling slowly as it approached the stop sign and intersection and continued at the same slow speed to the point of impact, that at either estimate Mrs. Verbois would have had plenty of time to have blown her horn when Patricia was at the stop sign or brought her car to a stop at that time or brought it to a stop when Patricia arrived at the intersection, in time to avoid the collision. If Mrs. Verbois was traveling as slow as 25 miles per hour, she was going 36.5 feet per second and could bring her car to a complete stop within 61 feet. If Patricia Biggs was traveling at 5 miles per hour she was going approximately 7 feet per second, and she traveled from the stop sign 26 feet before she was struck, which would have been almost 4 seconds. From the intersection she traveled 14 feet, which would have been approximately 2 seconds. Thus, Mrs. Verbois could and should have seen her when she passed the stop sign and realized that she was in a position of peril at that time *182 by her obvious actions of disregarding the stop sign, not slowing down and maintaining the same slow speed toward the intersection without looking to the right or left, at which time Mrs. Verbois was approximately 4 seconds away, or even if we say 3, she was almost 110 feet and at that time, had she even blown her horn Patricia would have been warned of her approach and could have brought her bicycle to a stop in approximately 7 feet or sooner. Even if we say that Mrs. Verbois was 2 seconds away she was 73 feet from the point of impact and needed only 61 feet at the most to avoid striking the child. It is positively shown by the physical facts that Mrs. Verbois did not see the child on the bicycle until practically the time she hit her, for at most the distance was 18 to 20 feet when she first consciously saw Patricia Biggs and realized that she was going to hit her, and the front of her car actually struck the bicycle and Patricia before the brakes took effect. The front portion of her car was 7 feet past the point of impact at the time the brakes took effect. It is also well to remember that at the time the brakes took effect, the rear wheels were 7 feet within the intersection itself and only 5 feet from the point of impact. Therefore, had Mrs. Verbois been keeping a proper lookout she could have and should have seen Patricia Biggs when she passed the stop sign and/or entered the intersection, and at either time there was more than sufficient distance between the two vehicles for her to have avoided the accident by sounding her horn or bringing her car to a stop. She had the last clear chance to avoid this collision.
The defendants have not placed the quantum awarded by the judgment of the District Court at issue on this appeal and no answer to the appeal has been filed by the plaintiff.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.
HERGET, Judge (dissenting).
Plaintiff, Oscar L. Biggs, individually and for and in behalf of his minor daughter Patricia Nell Biggs, instituted suit against Mrs. Sammie P. Verbois, her husband George M. Verbois, and their public liability insurer Indiana Lumbermen's Insurance Company, seeking damages for personal injuries sustained by his child and for medical expenses incurred by him resulting from an accident in which Patricia was injured when, while riding a bicycle, she came in physical contact with an automobile driven by Mrs. Verbois. The Trial Court, for oral reasons assigned, rendered judgments in favor of Plaintiffs and against Defendants, from which Defendants perfected suspensive appeals to this Court.
The accident occurred at the intersection of Longfellow Drive and Evangeline Street in the City of Baton Rouge, Louisiana. Evangeline Street is a two-lane hard-surfaced roadway bearing easterly and westerly. Longfellow Drive is a two-lane street to the south of Evangeline Street but is a boulevard to the north thereof and extends north and south.
On October 31, 1960 at approximately 4:30 p.m. Patricia Nell Biggs, Plaintiff's minor daughter who was then eleven years and one month old, was proceeding in a northerly direction on Longfellow Drive; Mrs. Verbois was driving the family automobile in a westerly direction on Evangeline Street. The two named streets intersect and there is a stop sign on Longfellow Drive requiring vehicles to stop before entering the intersection. This stop sign is erected twelve feet south of the intersection of the streets. In her testimony Patricia was unable to remember whether she had stopped at the stop sign or whether she had seen same. However, by stipulation of counsel it was agreed that a witness summoned by Defendants to testify at the trial" and who was ill at the time, if present, would testify Patricia entered the intersection without reducing her speed or without *183 looking in either direction. Though the witness did not testify to this effect nor was there a stipulation thereon, it is apparent Patricia was riding her bicycle in complete oblivion of all signs of cautions and entered the intersection without stopping. There were no other disinterested witnesses produced by either side as to any facts preceding the occurrence of the accident. Without question, it is sheer negligence for an adult motorist to disregard regulatory traffic rules and signs placed for the safety of the public as well as his own. Patricia entered the intersection and had proceeded some twelve feet therein when her bicycle was struck by the Verbois car causing injuries for which recovery is sought. The evidence reflects Mrs. Verbois proceeding along Evangeline Street was well aware there was a stop sign at this intersection and she was on the favored street. There is no evidence which would give reason to believe at the time of the accident or prior thereto she was proceeding at an excessive rate of speed.
Accordingly, we have for resolution the question of liability wherein Plaintiff's minor daughter disregards a stop sign, enters the intersection and is injured when her bicycle is in collision with an automobile owned, operated and insured by Defendants and being driven within the lawful speed limit.
There is, in my opinion, both in this State and our sister states confusion as to the liability or responsibility of respective drivers in intersectional collisions. Especially is this evident in collisions occurring at intersections controlled by semaphore signals or stop signs. Many cases distinguish these intersectional collisions by giving regard to exceptional circumstances in the particular factual situation. In Louisiana, the jurisprudence seemed apparently to be crystallizing on the adoption of the principle that a driver on a favored street, proceeding within the legal speed limits, would only not be negligent in such action but would in fact be complying with the factors making it possible to permit traffic to move quickly in relying upon the assumption traffic approaching from inferior streets would comply with the safety measures making such recognition of the right of the favored motorist to so proceed, thereby permitting the orderly quick movement for which engineers had designed the streets. Thus, it was becoming conclusive a motorist on a favored traffic controlled street would not be required to observe any precautions except to keep within the limitations of the speed and within such safe distance from cars preceding him that he could in emergencies prevent an accident. If traffic is to be moved at the designed rate the engineers prescribed, on a heavily travelled street such as Evangeline the motorist must in the exercise of caution keep his eyes ahead with darting glances in the rear view mirror for following traffic, so there is little or no time left for observation of approaching traffic on subservient streets. By this, I do not mean to condone the actions of a motorist traveling on a favored street observing an oncoming motorist on an unfavored street approaching the intersection at such speed it would be apparent he would be unable to stop in accordance with a traffic signal and if both continued in the same manner an accident inevitably would ensue if in fact he does make observation of the perilous position of the motorist on the less favored street and at a time when he is in a position to, by action on his part, refrain from coldly relying upon his superior right of way.
In Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535, as I read the opinion, though the case is cited as authority for the view that a motorist on a favored street is required to observe and take precautions as to motorists approaching on intersecting streets controlled by stop signs, and though, admittedly, there is in the opinion phraseology justifying such conclusion, in fact the why and the wherefore of the decision was that a motorist traveling on a favored street, without knowledge of controls placed on less favored intersecting street, was guilty of negligence in failing *184 to observe an approaching vehicle on the less favored street. Had he observed, he would have known the continued progress of each vehicle would result in collision and, in addition, the motorist in the cited case was proceeding on the favored street at an excessive rate of speed which the Court concluded was a proximate causation of the collision. In addition, the plaintiff in the Randall case was a guest passenger, not guilty of contributory negligence.
In the concurring opinion of Justice McCaleb in the Randall case supra, 124 So.2d at page 543, he observed:
"A consideration of the facts of this case has not convinced me that the bus operator should or could reasonably have anticipated that the driver of the Randall car would not respect the superior right-of-way of the bus by bringing the car to a stop before it preempted the intersection. Under all of our latest cases, we have given increasing recognition to the right of the motorist travelling on right-of-way streets to indulge in the assumption that traffic approaching intersections from less favored streets will observe the law and it is only in exceptional circumstances (which I do not find present in this case), where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict. See Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance [Co.,] 232 La. 831, 95 So.2d 328; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 and Youngblood v. Robison, 239 La. 338, 118 So.2d 431."
Thus, the exceptional circumstances on which the majority anchored its opinion was the failure on the part of a motorist without knowledge of traffic controls on intervening streets, though in fact he was on a favored street, to observe traffic approaching on the unfavored street. Factually, therefore, the Randall case is distinguishable from the present case in that the evidence clearly reflects Mrs. Verbois was familiar with Evangeline Street and its intersecting streets and was fully aware of the existence of stop signs on the intervening streets and especially on Longfellow Drive which fully warranted her in her belief she could proceed within the legal speed limitations on Evangeline Street.
Under the law of Louisiana a bicycle is a vehicle within the meaning thereof and, accordingly, a rider thereon is required to comply with all statutory provisions regulating vehicular traffic. LSA-R.S. 32:1(27), Fuller v. Buckner, La.App., 38 So.2d 422. Therefore, Patricia, proceeding north on Longfellow Drive intending to cross Evangeline Street, was under a duty to stop and observe traffic on Evangeline Street prior to proceeding to traverse same unless her failure to so act may be excused on the jurisprudential rule a child within certain limitations of age and circumstances may not be held guilty of contributory negligence. In this respect, however, from the decisions in Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269; Rodriguez v. Abadie, La.App., 168 So. 515; Tabary v. New Orleans Public Service, La.App., 142 So. 800; Ferrand v. W. H. Cook and Company, 146 La. 17, 83 So. 362; Lawrence v. Core, La.App., 132 So.2d 82; Hargus v. New Orleans Public Service, 9 La.App. 117, 118 So. 847, it appears settled that a child of the age and intelligence of Patricia is accorded the intellectual quotient and knowledge which does not absolve her from negligence in entering the intersection at which there is erected a stop sign requiring her to do so prior to emerging therein. I therefore am of the opinion Patricia was guilty of negligence in entering the intersection of these streets without stopping, in compliance with the traffic signal requiring her to so *185 do. In consequence, because of her contributory negligence, she is barred from recovery even though the defendant Mrs. Verbois were negligent, unless, as counsel for Plaintiff maintains, the doctrine of the last clear chance is applicable.
The only negligence which could be attributable to Mrs. Verbois would be her failure to have observed Patricia entering the intersection and not taking precautionary measures to prevent the accident. For, if in fact Mrs. Verbois had observed the child proceeding in a northerly direction on Longfellow Drive south of the stop sign pedaling her bicycle as she so testified, without giving the speed she was making but sitting on the seat and not in any way giving evidence of excessive speed, there would have been no reason for Mrs. Verbois to have concluded the child would disregard the stop sign and continue her forward progress into the path of Mrs. Verbois' car on Evangeline Street. Accordingly, I feel the only basis on which a determination could be made Mrs. Verbois were negligent in the causation of this unfortunate accident would be that while she was in a position and at a distance from the intersection she failed to take precautions a person of ordinary prudence would have exercised upon observing or under the law being held to have observed Patricia failing to stop at the stop sign and continuing her forward progress. The testimony of Mrs. Verbois on the point as to where she first observed Patricia and the precautionary measures taken by her to avoid striking the child is, to say the least, confusing and, I believe, from the physical facts not a true depiction of the actual factual situation. I recognize when an accident of this nature happens, human frailties being what they are, a person, especially one not versed in the importance of the meaning of the statements bearing on the facts, will relate statements clearly not in accord with the actualities. As, for instance, in her deposition she said at the time of the impact she was traveling at a speed of 30-35 miles per hour and also stated she did not see the bicycle until the moment of the impact; whereas, on the trial she testified she did see the bicycle just before the impact. The physical facts, however, show that she applied her brakes five feet before striking the bicycle and she stopped her car 25 feet thereafter. Her error is apparent from an examination of the distance charts in Blashfield Cyclopedia of Automobile Law and Practice, Section 6237. It is obvious from a review of the physical facts coupled with the analysis in these charts, in giving consideration to reaction time and application of her brakes Mrs. Verbois must have been traveling at not more than 25 miles per hour prior to the accident. Mrs. Verbois must have observed the child when she was some 30-35 feet distant therefrom. As I have previously observed, the traffic stop sign was twelve feet south of the intersection and the accident occurred approximately in the center of the intersecting streets, so that Patricia traveled approximately 24 feet past the stop sign before the collision occurred. Under these physical findings, I am doubtful there is any basis for holding Mrs. Verbois negligent in the ensuing collision. However, conceding that she were negligent in having failed to observe the intervening bicycle ridden by Patricia, I am of the opinion the last clear chance doctrine is not applicable to the factual situation here existing for the reason at the time of making or at the time she should have made observation of Patricia entering the intersection, Mrs. Verbois was proceeding at 25 miles per hour, the lawful speed limit; she was so close to the intersection the emergency created by the negligence of Patricia in entering the intersection without stopping made impossible her ability to have discovered the peril in which Patricia had placed herself at a time when, with reason and the exercise of care, she could have avoided striking the child. Central Louisiana Electric Company v. Hodges, La.App., 137 So.2d 132; Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App., 125 So.2d 430; Hilton v. Bankers Fire & Marine Insurance Company, La.App., 134 So.2d 82; *186 Maryland Casualty Co. v. Allstate Insurance Co., La.App., 96 So.2d 340; Breaux v. Meyers, La.App., 132 So.2d 77; and Joffre v. Ike Haggert Machine Works, Inc., La.App., 100 So.2d 557.
In the Joffre case supra, the Court of Appeal, Orleans, held the doctrine of last clear chance inapplicable where plaintiff's own negligence extended up to and contributed to the injury. The case involved two motorists, one on a motorcycle and the other driving a truck and the Court held they were guilty of concurrent negligence. At pages 561-562 of 100 So.2d, I find in the opinion:
"Prior to the advent of Rottman v. Beverly, 1935, 183 La. 947, 165 So. 153, the state of the law with reference to the doctrine of the last clear chance was that the doctrine would not be extended to those cases where the plaintiff's own negligence was continuing and existed up to and actually contributed to the accident and injury. See cases of Callery v. Morgan's Louisiana & T.R. & S.S. Co., 139 La. 763, 72 So. 222; Castile v. O'Keefe, 138 La. 479, 70 So. 481; Wolf v. New Orleans Ry. & Light Co., 133 La. 891, 63 So. 392, and many others.
"But in Rottman v. Beverly certain facts appeared which presented to the court for decision the question whether under those facts an exception to the rule of continuing negligence in cases involving the doctrine of the last chance could exist. The plaintiff in the case was a pedestrian who attempted to cross the highway diagonally and entered the highway without looking or listening and proceeded to cross with her head down paying not the slightest attention and seemed to be utterly oblivious to danger. The defendant driver of the automobile saw plaintiff's plight in ample time to make full use of his brakes as would have enabled him to avoid the accident. From the case evolved what is now known as the doctrine of discovered peril, it being held that although the plaintiff may have negligently placed herself in a dangerous situation, still the defendant is liable if he actually discovered the danger of the plaintiff and had an opportunity to avoid injuring her. The Supreme Court said (183 La. 947, 165 So. [153] 156):
"`* * * if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. * * *"
"In discussing the principle of continuing negligence in cases where the doctrine of the last clear chance was relied upon for recovery, the Court had this to say:
"`It is frequently stated by courts that there can be no recovery in negligence cases "where it appears that the negligence of the plaintiff continued until the moment of the accident," but that is not a correct statement of the rule. Thus broadly stated, it is misleading, for it is not true in a strict legal sense that a plaintiff is barred from recovery under any and all circumstances merely because he was guilty of negligence which continued down to the moment of the accident which caused his injury, and this court has never so held."
"A short time later, in Jackson v. Cook, 189 La. 860, 181 So. 195, there was introduced into our jurisprudence what has come to be known as the doctrine of apparent peril. The Court in that case held that even though the plaintiff may have negligently put himself into a dangerous situation and even though the defendant has not *187 actually discovered or become apprised of plaintiff's danger, still if the defendant by the exercise of ordinary care could have discovered it, the defendant is to be held responsible for the consequences of the accident for his having failed to avoid it.
"Our opinion is that plaintiff's attempt to invoke the doctrine of the last clear chance or its extensions can be of no avail to him simply because the facts of the case do not warrant the application of the doctrine. This court is not now dealing with a pedestrian who unfortunately has gotten himself into a perilous situation from which he can do nothing to save himself and is injured because the defendant failed in his humanitarian duty of saving him from the consequences of his negligent act. The actors in the collision before us are two motorists, each of whom was guilty of concurrent negligence, as has already been stated, which negligence continued on down to the instant the vehicles came into contact, up to which point either motorist, had he been prudent and alert, could have done something to have avoided the accident. The doctrines enunciated in Rottman v. Beverly and Jackson v. Cook are merely exceptions to the general rule that the doctrine of the last clear chance will not be extended to cases where the plaintiff's own negligence extended up to and contributed to the injury. The facts of the instant case present no exception to the general rule, and we think that in view of the continuing negligence of Melvin Joffre, there is no room for the admission of the doctrine of the last clear chance."
In the opinion of the majority in this case, it clearly recognizes, as of course it must, Patricia was guilty of contributory negligence in failing to stop at the stop sign and entering the intersection in the face of the oncoming Verbois vehicle. Without question Patricia's negligence in this respect extended up to and contributed to the accident and, as in this case two vehicles are involved, the factual situation in the Joffre case and the principles of law thereto applicable are indistinguishable. Accordingly, the decision of the majority herein giving application to the doctrine of last clear chance is in direct conflict with that of the Orleans Court.
I am unable to agree with the majority in the Joffre case that the continued negligence of plaintiff makes inapplicable the doctrine of the last clear chance as in the cases of Jackson v. Cook, 189 La. 860, 181 So. 195 and Rottman v. Beverly, 183 La. 947, 165 So. 153 though both plaintiffs were pedestrians, their negligence in each case continued up to the time of the accident despite which the Supreme Court applied the doctrine of discovered peril and permitted recovery. I see no basis for making any distinction as to the application of the last clear chance on the basis the doctrine is applicable as to a factual situation involving a negligent concurring pedestrian and not applicable as to one involving a negligent concurring motorist.
As recognized, the doctrine of last clear chance or discovered peril is a jurisprudential rule announced by the courts as, I believe to be, an inhibiter of the motorist coldly proceeding upon discovering, or upon being held to have been in a position to reasonably discover, another in a perilous situation and failing to take reasonable precautions to avoid injuring the other. The view is ofttimes expressed that in Louisiana we do not have the doctrine of comparative negligence but in actuality if the failure on the part of the motorist to avoid an accident when he has the last clear chance to so do or failure to recognize the apparent peril in which another has placed himself and an accident ensues with that person, when, upon observation and reasonable precautionary measures same could be avoided is to be categorized as negligence, then in circumstances where both plaintiff and defendant are guilty of negligence contributing to the accident and the doctrine of last clear chance is applied *188 to permit recovery by a negligent plaintiff, the Court, to that extent does, in effect, apply the doctrine of comparative negligence.
In the instant case I am of the opinion the doctrine of last clear chance or discovered peril is inapplicable. At the time Mrs. Verbois saw or should have seen Patricia so as to be aware of the peril Patricia had placed herself in by entering the intersection, Mrs. Verbois was no further distant from the intersection, according to the mute physical facts, than 35-40 feet, traveling within the legal speed limit of 25 miles per hour. In Louisiana, a private motorist is not the insurer of one injured resulting from the operation of a vehicle but is responsible only where, by his exercise of ordinary or reasonable care, such injury could have been avoided. Upon observing Patricia enter the intersection, Mrs. Verbois immediately applied the brakes of her car. Despite the exercise of such ordinary and reasonable precaution Mrs. Verbois was unable to avoid this unfortunate accident.
In Bergeron v. Department of Highways, 221 La. 595, 60 So.2d 4 at page 8, the Supreme Court, in refusing to make applicable the doctrine of last clear chance to the factual situation therein involved, observed:
"* * * It involves as we have said various calculations of the rate of speed, of the time it takes to react to an emergency and the application of brakes as well as the distance in which a truck, like the one in this case, can be brought to a stop, travelling at a given speed. As a result of those calculations, especially those of the rate of speed of the respective vehicles which are based principally on assumptions, the difference is one of seconds in the matter of time, and of a few feet only in the matter of distance; too little in our opinion to justify the application of the doctrine of the last clear chance and discovered peril. `The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application." Hutcheson v. Misenheimer, 169 Va. 511, 194 S.E. 665, 667."
Further, the Court observed:
"* * * The rule of `the last clear chance' or `discovered peril applies to both parties who are involved in an accident. In 38 Am.Jur. Negligence, Sec. 227, that thought is expressed as follows: `As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff." Under the facts of this case it was the bicycle rider who had the better opportunity to observe the situation and apprehend the danger before it became imminent. His opportunity came as late, if not later than that of the truck driver, to avoid the accident; he had the last clear chance and is not in a position to invoke its provisions against the defendants."
I respectfully dissent.
Rehearing denied; HERGET, J., dissents.